A. BYLER v. W. R. JOHNSON ET AL.

1. TRESPASS TO TRY TITLE—LIS PENDENS—NOTICE.—When the plaintiff in trespass to try title alleges the execution by his vendee of a deed to defendant, under which he went into possession, executed before the institution of a former suit by plaintiff against said vendee, to subject the land to the vendor's lien, and to which suit defendant was not a party, the exclusion of all evidence concerning the proceedings in said suit is not error.

2. NOTICE—SALE—LAND—PURCHASER.—As against a purchaser from the vendee of whose claim there is notice, a sale, had under a decree of foreclosure against the original vendee alone, is ineffectual to pass title; it would be otherwise if the original vendee had executed a mortgage to secure the purchase-money at the time he received a deed; in such case, the two instruments together would constitute an executory contract, and title would not pass until payment of purchase-money.

APPEAL from Caldwell. Tried below before the Hon. Henry Maney.

On the 20th day of November, 1857, appellant sold the land in controversy to P. A. and Martha R. Swann, taking three promissory notes, for $875 each, for the purchase-money, due in one, two, and three years. These notes were set out in the deed from appellant to Swann.

The notes were not paid. About the time the last note became due the war began; and on the 10th day of February, 1866, the appellant brought his suit to foreclose his vendor's lien in Caldwell county, where the land is situated. The venue was changed to Gonzales county, and on the 14th day of October, A. D. 1868, a trial was had, and judgment rendered, foreclosing the vendor's lien.

In that case, the defendants, Swanns, plead general demurrer, general denial, and the statute of limitations, but said nothing about having sold the land to the defendants in this suit. The appellees were not made parties to that suit.

An order of sale issued, and on the first Tuesday in January, 1869, the land was sold by the sheriff of Caldwell county, at which sale the appellant (plaintiff in the original suit) became the purchaser, at $710.

On the 10th day of March, 1869, appellant brought this suit, in trespass to try title, against appellees, and, amongst other things, alleged the execution by his vendees of a conveyance to appellees, under which they went into possession before the suit to foreclose. On the first trial, appellant recovered judgment for the land and about $800 for rents and profits. That judgment was reversed by this court at its last term on questions not now before this court.

At the January term of the court in Caldwell county, another trial was had, and under instructions from the court to do so, the jury returned a verdict for appellees.

A motion was then made for a new trial, which the court refused, and from the judgment the appellant prosecutes this appeal.

The statement of facts shows that—

1 It was agreed between the parties that the title, both legal and equitable, was in appellant Byler on the 20th day of November, 1875, the date of his sale to the Swanns.

2. That appellant sold the land in controversy to P. A. and Martha R. Swann on that day, taking for the purchase-money three promissory notes, payable in one, two, and three years, for $875 each, which were set out in the deed of conveyance made to Swanns. No mortgage or deed of trust to secure purchase-money was shown.

3. Appellants then offered in evidence the transcript of the papers and proceedings in the case of Byler v. Swanns, from Gonzales county District Court, showing foreclosure of the vendor's lien on the land, order of sale, sale, and sheriff's re

turn, showing Byler to be the purchaser. With this transcript the sheriff's deed was also offered in evidence, all of which was excluded on objections by defendants, for the reason that defendants, Johnstons, were not parties to the original suit.

4. Appellant then offered to prove the value of the rents and profits, as claimed in the petition, which, being objected to, was excluded by the court.

5. Appellees were then permitted, over the objections of plaintiff, to read a deed to them from the Swanns, dated in 1862, and filed for record in 1863.

6. Appellant offered to prove by the defendant, W. R. Johnston, on cross-examination, that defendants knew, at and before their purchase of the land in controversy, that the purchase-money due Byler from Swann, for the payment of which the land was bound, had never been paid; and also that defendants knew of the pendency of the suit of Byler *v.* Swann, to foreclose his vendor's lien, long before judgment was rendered therein, and took no steps to make themselves parties to that suit. This evidence being objected to by defendants, the court excluded it.

7. The court charged the jury to find for defendants; which they did, and judgment was rendered accordingly. This charge is assigned as error; but no exception was taken for that cause.

8. The plaintiffs applied for a new trial on account of the several rulings of the court in the introduction and exclusion of evidence, and on account of this charge the refusal of this application for a new trial is also assigned as error.

*L. G. Storey,* for appellant.—We think the fee in this case remained in the vendor Byler, notwithstanding his deed to Swann, as he set out his three promissory notes given for the purchase-money in the deed, and retained his vendor's lien to secure their payment. This doctrine has been universally held by this court, and is discussed at length by Judge

Hemphill in the case of Dunlap *v.* Wright, 11 Tex., 602–604; Howard *v.* Davis, 6 Tex., 174.

There seems to be quite a distinction between vendors' liens and mortgages—to secure the payment of borrowed money, for instance.

In the latter case the mortgagor retains the fee. In the former case the vendor stands in the attitude of a mortgagee, and yet he has and holds the fee until the purchase-money is paid, and the moment this is done the seizin will then, and not until then, be regarded as having been in the vendee from the date of his purchase. (See Dunlap *v.* Wright, 11 Tex., 603.)

Again, in this same case, Judge Hemphill says: "Whatever may be the effect of an ordinary mortgage to secure the loan of money or the right of parties thereto, yet where it is to secure the payment of the purchase-money and is executed simultaneously with the conveyance, the vendor has, until the money is paid or the mortgage foreclosed, the superior right to the land." (Ib., 604.)

It will not be contended by counsel that appellees did not have notice, both actual and constructive, of the outstanding notes due Byler for the purchase-money when they bought the land of Swann. They are bound to take notice of that fact as recited in the deed from Byler to Swann. They also had actual notice.

Appellees are, in no sense of the word, innocent purchasers. To be such they must have had no notice of Byler's claim; they must have bought in good faith; they must have paid a valuable consideration. They had ample notice of our lien. They have not shown good faith by offering to pay off the lien, or in any other way. They are expecting equity of this court, without a plea upon which to grant it, and without offering to do equity by paying the purchase-money. If Byler had known that Johnston was a purchaser of the land from Swann when he brought his suit against the Swanns to foreclose his lien in 1866, Johnston would perhaps have been

a proper party, but we contend they are not necessary parties. The only object in making them parties is to allow them to redeem the land, or to show some good cause why Byler's lien should not be enforced; and if so, under proper pleas, they would be allowed the same privilege in this suit; and having failed to avail themselves of this right, we think it an evidence of a want of good faith. (Hall v. Hall, 11 Tex., 548.)

By reference to the petitions in both suits, it will be seen that Byler was, on the 10th day of February, 1866, and is now, a resident of Fayette county, Texas, and never was a resident of Caldwell county. Having sold to the Swanns in 1857, and finding them occupying the land exclusively up to the date he brings his suit to foreclose, he is not chargeable with any notice whatever of Johnston's purchase, and the record discloses no such knowledge until Byler finds it necessary to bring this suit for trespass, on the 10th day of March, 1869; and in his petition alleges that he was in quiet and peaceable possession on the 5th day of January, 1869, when the defendants forcibly ejected him and took possession. Under such a state of facts, we think the law would require the defendants to tender the amount due Byler into court, under a plea claiming the right to redeem.

We understand this court to hold the doctrine that before one can demand equity of the court he must do equity; and as there could be no necessity in making the Johnstons defendants in the case of Byler v. Swanns, except to give them the right to redeem, we contend that under proper pleading by them they could have had the same equitable right enforced in this case. This right, however, could only be secured by a proper plea; it cannot be done under the plea of "not guilty," or any other plea contained in this record. The right to redeem should be an "independent equitable right," and "should be presented by proper averments." (See Ayres v. Duprey, 27 Tex., 593.) And without such a plea on their part we could not be required to anticipate their desires and to ask a foreclosure as to them.

The strongest case in the Texas Reports in favor of the appellees, we think, is the case of Hall *v.* Hall, 11 Tex., 548, and we ask a careful consideration of that case by the court.

In that case the property was personal property, and known by the plaintiff to be in the hands of a subsequent purchaser, and the question of parties was raised in the same suit and not in a subsequent suit, as in this case.

But there is another case almost exactly like the one at bar, in which the question was raised, as here, in a subsequent suit, in which Judge Lipscomb delivered the opinion of the court, and we understand him to lay down this rule: That if C purchased land of B, knowing that the land was still liable for the purchase-money due A from B, and afterwards A brings suit against B to foreclose his vendor's lien, and fails to make C a party, yet if C knows the suit is pending, and fails to make himself a party and assert his right in that suit to redeem, he is thereby estopped, and cannot in a subsequent suit assert his right to redeem. (See Webb *v.* Maxan, 11 Tex., 678.)

Now let us apply this rule to the facts of this case.

1. Johnston bought of the Swanns with full notice that Byler's vendor's lien was retained and had never been discharged.

2. Johnstons knew of the pendency of the suit by Byler against Swann to foreclose his lien, and failed to make themselves parties.

But we have a better case than Webb *v.* Maxan. In that case the mortgagor knew of the subsequent incumbrancer, and in his petition proposed to make him, Maxan, a party, but never served him with process or took judgment against him; not so here.

There is nothing in this record to justify the conclusion that Byler knew anything about the subsequent incumbrance. On the contrary, the Swanns, having continued in exclusive possession of the land and premises, would rebut any other presumption that might arise from the constructive notice

given us by the record of the deed from Swann to Johnston in 1863. Had the Swanns been off of the land, and Johnston in actual personal possession, then we might have been required to take notice of what the record contained, and thereby to have ascertained by what authority Johnston held possession. (See Watkins *v.* Edwards, 23 Tex., 448; Wethered *v.* Boon, 17 Tex., 147–150.)

We take it the record would only be constructive notice, while the possession was actual notice. The Swanns were put in possession in 1857; they held in trust for Byler.

In the case of Webb *v.* Maxan, this court attached much importance to the fact "that there was nothing in the record to show that the mortagee, at the time of the commencement of his suit to foreclose his mortgage, knew of the subsequent incumbrance, and that there was no evidence that the mortgagor had left the possession of the mortgaged premises." (11 Tex., 678.)

We refer to this language to sustain our view that the record of Swann's deed to Johnston was not sufficient to put Byler on notice of the sale while Swann was still in possession. By reference to the transcript in the case above cited, it will be seen that the deed from Kingsberry to Maxan was dated on the 28th day of July, 1849, and recorded the same day, just one month before the suit was filed to foreclose the mortgage lien. In that case the court also uses this language: "The presumption is fair that he (the mortgagor) was in possession when the suit was begun."

The fee in this case remained in the vendor Byler, notwithstanding his deed to Swann, as he set out his three promissory notes given for the purchase-money in the deed, and retained his vendor's lien to secure the payment of the notes.

*Jackson & Jackson,* for appellees.—In appellant's brief it is contended that "the fee in this case remained in the vendor Byler, notwithstanding his deed to the Swanns," and in support of this assumption the cases of Dunlap *v.* Wright, 11 Tex.,

602, and Howard *v.* Davis, 6 Tex., 174, are cited.  But these cases teach a very different doctrine.

The effect of this is to make the sale a conditional one, and of course an executory one.  Both of the cases cited turned expressly on the fact that a mortgage was taken contemporaneously with the conveyance.  Neither of those cases has the slightest relevancy to a sale by absolute deed when no mortgage or other defeasance was taken from the vendee. It was of this last species of sale that Judge Hemphill spoke when he said: "If the contract was executed, he (the vendor) would have a lien for the purchase-money without a mortgage." (6 Tex., 182.)  And this of course and of necessity implies, that the fee and title passed to the vendee by the absolute conveyance.

In the case at bar the deed from Byler to the Swanns was absolute upon its face, and no mortgage or other defeasance was executed by the Swanns.  The legal result is that the title did pass from Byler to the Swanns, and the utmost that could have remained in Byler was a vendor's lien.

In Buchanan *v.* Monroe, 22 Tex., 541, this court said that "the equity of redemption is the real and beneficial estate, tantamount to the fee at law," and in Floyd *v.* Borland, 33 Tex., 782, the deduction was correctly drawn that "a decree which did not foreclose it (*i. e.*, the equity of redemption) is not a decree on which it could be sold;" and therefore it was held, that a decree of foreclosure against Fenner, who stood precisely in the attitude of the Swanns, could not foreclose an equity of redemption vested in his vendee, who stood exactly in the attitude of the present appellees.

A suit to enforce a vendor's lien is not a proceeding *in rem*, unless it be brought by attachment.  Like all other actions *in personam*, all parties to be affected by it must be cited by legal process.  There is nothing in suits on vendor's lien to exonerate them from the law governing the jurisdiction of courts, or from the principles controlling the effect of their judgments and decrees.

The following Texas cases sufficiently establish the positions we have taken: Hall v. Hall, 11 Tex., 547; Duty v. Graham, 12 Tex., 428; Buchanan v. Monroe, 22 Tex., 542; Laird v. Winters, 27 Tex., 442; Mills v. Traylor, 30 Tex., 11; Floyd v. Borland, 33 Tex., 782.

To avoid the effect of these principles, appellant insists that he proposed to prove by Johnston that he bought with notice that the Swanns had never paid for the land, and also that he knew of the pendency of Byler's suit against the Swanns. But such notice or knowledge could not make the appellees parties to the suit, nor make the decree against the Swanns *res adjudicata* against the appellees.

The appellees were not purchasers *pendente lite*, nor after the decree against the Swanns was rendered. When Byler sued the Swanns, the appellees were, and for some four years had been, the holders of the legal title, and of the right to redeem any lien or incumbrance on the land; and of that title and that right they could not be deprived by any decree to which they were not parties. (11 Tex., 547.)

The only "notice" which could have subjected them or their title to the operation of a decree enforcing a lien upon the land was legal notice by judicial process. Even if they knew of the suit against their vendors, the Swanns, they were not bound to intervene in that suit. They were purchasers *ante litem motam*, and citation to their vendors was not citation to them. They held adversely to their vendors and all the world.

The case of Webb v. Maxan, 11 Tex., 678, relied on by appellant, affords him no support whatever. That was a bill to redeem, brought by a party whose own allegations showed that there was no equity in his case.

When the charge was given, the appellant neither excepted to it nor asked any other charge. He therefore cannot object to it now.

GOULD, ASSOCIATE JUSTICE.—The plaintiff, in his amended

petition, alleged the execution by his vendees in December, 1862, several years before the institution of the suit to foreclose, of a conveyance to the defendants in this suit, under which they entered into possession. Under these circumstances the defendants cannot be affected by proceedings in a suit to which they were not parties, and the court did not err in excluding evidence of such proceedings from the jury. In more than one case at the late Galveston Term the proposition is affirmed that, as against a purchaser of whose claim there is notice, a sale had under decree of foreclosure against the original vendee alone is ineffectual to pass the title. (4 Kent, 186; 1 Dan. Ch. Pr., 277; Watson *v.* Spence, 20 Wendell, 260; Harris *v.* Beach, 3 Johns. Ch.; Peto *v.* Hammond, 29 Beavan, 91; Mills *v.* Traylor, 30 Tex., 11; Buchanan *v.* Monroe, 22 Tex., 542; Rorer on Jud. Sales, secs. 176, 199, 382; 2 Hilliard on Mort., p. 87; Freeman on Judg., secs. 162, 201.)

Counsel contend that the evidence shows that the original vendee continued in possession until after the commencement of the suit to foreclose, and that although the deed to the Johnstons was on record, this actual possession would relieve the plaintiff of the notice which would otherwise arise from registration. The evidence, however, is, that after their conveyance the original vendees held as tenants, paying rent. In Webb *v.* Maxan, 11 Tex., 678, if the purchaser's deed was on record when the suit for foreclosure was brought, it does not so appear in the case as reported, nor does it appear that the attention of the court was called to the fact. Under the evidence, as well as the pleadings, the plaintiff was, we think, chargeable with notice of the sale to the Johnstons.

In a suit where the question of title alone is litigated, their title is superior to the plaintiff's, and must prevail. The pleadings presented no other issues, save that of title, and no question is before us as to what may be the equities of either plaintiff or defendants in any other proceeding. (Mann *v.* Falcon, 25 Tex., 272.)

It has been contended that, by virtue of his vendor's lien, Byler retained such ownership as would enable him, notwithstanding his conveyance, to maintain a suit for possession. In the cases cited by counsel, (Dunlap *v.* Wright 11 Tex., 603, and Howard *v.* Davis, 6 Tex., 174,) the vendee, at the time he received his deed, executed a mortgage to secure the purchase-money; and it was held that the two instruments taken together constituted an executory contract. Those cases are no authority for the position contended for.

                                                        AFFIRMED.