W. T. McAfee, Adm'r, v. W. D. Wheelis et al.

(Case No. 866.)

1. UNRECORDED LIEN — EXECUTION SALE — NOTICE.— At the sale of property levied on under execution, the holder of a note purporting on its face to be for purchase money for the land offered for sale, announced, in the hearing of bidders present, that such a lien existed. In a suit by the holder of the note to foreclose his lien upon the land sold, the burden of proof was upon him in asserting his equitable claim against the legal title of the purchaser at the execution sale. The levy of the execution being a lien upon the land, in the absence of anything indicating the existence of the purchase money lien, either on the face of the title papers or of record, or possession of property by tenant or otherwise, and it not being shown that the judgment creditor had actual notice of the purchase money lien at the time of the levy, the knowledge of the purchaser at the execution sale, of the lien held by the plaintiff, will not prevent his taking a good title to the land under the sheriff's deed as against the lien of the note. 24 Tex., 365; 48 Tex., 469; 50 Tex., 315; id., 323; 23 Tex., 651; 45 Tex., 527; 46 Tex., 401; id., 416; 47 Tex., 170.

Appeal from Rusk. Tried below before the Hon. A. J. Booty.

December 27, 1873, S. J. McAfee, and W. D. Wheelis purchased of the International Railroad Company, lot No. 6, in block No. 121, in Overton, Rusk county, Texas. The deed recited the "consideration of $200 paid" by the vendees. The deed was filed for record March 19, 1874. March 20, 1874, Wheelis executed to McAfee an obligation as follows:

"$457.95.

"One day after date I promise to pay S. J. McAfee the sum of $457.95, currency, being part of the purchase money for my interest in lot six (6), in block one hundred and twenty-one (121), in the town of Overton, Rusk county, Texas. My interest in said property being bound for the payment of this note, bearing interest at ten per cent. per annum until paid. March 20, 1874.

    (Signed)                    "W. D. Wheelis."

November 9, 1874, J. S. Roberson et al. obtained a judgment in the district court of Rusk county against Isham Clark and W. T. McAfee. From this judgment the defendant McAfee appealed, the said W. D. Wheelis being surety on the appeal bond. The case was affirmed October, 1875, and judgment rendered against McAfee and his surety, Wheelis. The mandate was filed February 12, 1876, in the district court.

April 27, 1876, execution was issued against the defendants and the sureties on the appeal bond. The execution was levied May 12th on an undivided half interest in the said lot No. 6, block 121, in Overton. June 6th the lot was sold. On the day of sale proclamation was made that "there existed against the lot a note for the balance of the purchase money due the estate of S. J. McAfee." At the sale Joseph N. Still became the purchaser for $100. Deed was executed to Still, and it was filed for record June 10, 1876.

July 24, 1876, W. T. McAfee, who had become the administrator of S. J. McAfee, brought suit in district court of Rusk county against W. D. Wheelis, on the obligation made

by him above stated; seeking, also, to subject the lot, or one-half interest therein, to the payment of the debt, alleging the vendor's lien, etc.

In the record there is no evidence that citation was ever issued or served upon defendant Wheelis; nor did he ever appear or plead.

September 4, 1876, Still, the purchaser, intervened in the suit, setting up his purchase of the interest in the lot sought to be charged with the lien.

Plaintiff resisted the intervention by Still, excepted to its sufficiency, and pleaded that the intervenor was a purchaser with notice of the lien.

Amendments were made to meet exceptions until the pleadings on the part of plaintiff contained a full and clear statement of the facts relied on, charging that Still was a *mala fide* purchaser, and that no lien attached to the lot by the judgment, levy or sale under which Still claimed.

Still, in his amended petition, fully alleged the facts relied on by him; also denied the lien, and expressly denied notice of the lien, on the part of the plaintiffs, in the case of Robertson *et al: v.* Clark & McAfee *et al.* Intervenor also prayed that Augustine McAfee, the widow, and Sarah and Ida, minor children, and who were the heirs of plaintiff's intestate, be made parties, and that a special guardian of the minors be appointed, and that the lot be partitioned, the remaining half interest in the lot being in the estate of S. J. McAfee.

No citation to the widow and children of the intestate appears in the record.

Application for continuance was made by plaintiff, supported by the affidavit of the attorney of record, for want of the testimony of Wheelis. As the affidavit did not explain why it was made by the attorney, nor did it state that the testimony was expected by the next term, it was properly overruled.

On the trial the plaintiff read the note in evidence, and

showed that notice of the claim had been given on the day of the sheriff's sale, and that intervenor had actual notice at his purchase.

Still, the intervenor, read in evidence the deed from the International Railroad Company to McAfee and Wheelis; proved that Wheelis was surety on an appeal bond in case of Roberson *et al. v.* Clark *et al.;* the affirmance of the judgment below and judgment against Wheelis as surety; execution and levy May 12, 1876, of the execution on the lot No. 6 in block 121; sheriff's deed of date 6th June and recorded 10th June, 1876. Still acknowledged that notice had been given him the day of sale of plaintiff's claim, and he testified that he had bought and paid $100 for the one-half lot at the sheriff's sale.

Intervenor also called attorneys for plaintiffs in the suit of Roberson *et al. v.* Clark *et al.,* who testified that they were ignorant of the lien of the plaintiff at the time of the judgment, issuance and levy of the execution. It was in evidence that plaintiffs resided in Utah. One Barton, of the plaintiffs, was not called as witness.

On this state of the pleadings and evidence the court rendered judgment for plaintiff and against Wheelis for $229.08 and costs, and in favor of intervenor for an undivided half of the lot. Partition between intervenor and the widow and children of S. J. McAfee was awarded and commissioners appointed.

Motion by plaintiff for new trial was overruled, and he appealed.

The errors assigned are:

1. Failure to render judgment for foreclosure, etc., against Wheelis; and

2, 3 and 4. Complain of judgment in favor of the intervenor, insisting that he had notice, and that the judgment and levy under which he bought were not a lien.

5. Overruling application for continuance; and

6. That the amount of the judgment is less than that proved.

*Gould & Bagley,* for appellant.

*Jones & Wynne,* for appellees.

A. S. Walker, J.— The first error assigned is not well taken.· The defense interposed by the intervenor, if sustained, would prevent the court from ordering the sale of the lot.  Still was a necessary party to the suit for foreclosure, and he had the right to make any defense he could against the enforcement of the lien.  Wheelis by his default nor otherwise could affect Still's right to protect his title. Byler *v.* Johnson, 45 Tex., 509; Preston *v.* Breedlove, 45 Tex., 47.

The second, third and fourth assignments raise the inquiry whether, under the facts pleaded and in evidence, there passed to Still, by his purchase, a title free from the lien held by plaintiff.  Still having actual notice of the lien, the title must, if at all, be maintained by the lien fixed by the levy of the execution upon the lot, in favor of the plaintiffs in the judgment and execution.

The want of notice, as an affirmative fact, was not established by testimony on the part of Barton, one of the plaintiffs.  If such proof on the part of Still was necessary to his protection, then his title was not made out.

Referring to the transactions relied on as establishing the lien upon the lot claimed by plaintiff, it is manifest that the legal title to one-half interest in the lot vested in Wheelis, on December 27, 1873, by the deed to McAfee and Wheelis. The consideration — $200 — is acknowledged to have been paid.  There remained no equity in the vendor.  Both legal and equitable title passed in the sale and deed to the lot. What our courts term the "superior title," remaining in the vendor until the purchase money shall be paid, is only recognized where the deed shows an express lien for the purchase money, or when at the time a mortgage has been executed by the vendee.  Peters *v.* Clements, 46 Tex., 114; Davis *v.* Roosevelt, 49 Tex., 463; Burgess *v.* Millican, 50 Tex., 397; Baker *v.* Compton, Tyler term, 1879, opinion by Gould, Jus-

tice. This distinction has been often recognized between cases where the relation between the vendor and vendee to the land is dependent upon the payment of the purchase money, and those where the relation is clearly established, and the right to enforce the payment of the purchase money, or the vendor's lien, remains to the vendor — not as an estate in the land, but as a security for the debt. In the former cases limitation does not run as to the debt. In the latter the debt is barred, the lien is lost. In the former the right to enter by vendor, upon failure by the vendee to pay remains; in the latter only a right of action to subject the land. Whether in the former the holder could assign his estate so as to give the assignee the like power of revocation is not material, but in the latter case the assignee would take only the debt and its security.

It may be doubted whether the note declared on is in any sense a vendor's lien note. It never was given to the vendor, nor executed to McAfee instead of to the vendor (as in Cushman v. Flanagan, 48 Tex., 241). It was not contemporaneous with the purchase. The title in the lot between its purchase and the date of this note is, from the evidence, presumed to have been vested in McAfee and Wheelis. The purchase money for the entire lot was only $200. The note was for $457.95. It is not explained why or how this sum could form part of the purchase money when the whole lot only cost the smaller sum.

Whether the courts will ever raise an implied lien in the presence of an express contract; or, where the parties " have carved out their own security," they will or not be left to that selected by them, need not be discussed — there being no evidence other than *the note* showing its connection with the purchase of the lot, or otherwise showing facts from which the vendor's lien would be implied.

We regard the obligation sued on, in the absence of other testimony, as a lien only, and not evidencing any estate in the payee.

Being a lien from its terms, it is subject to the conditions attaching to a regular mortgage; as to creditors and pur-

chasers without notice, it would be void, unless recorded. Pas. Dig., 4797. The levy on 12th May, 1876, was upon the half of the lot when the legal title thereto was in Wheelis. The levy fixed a lien upon the interest of Wheelis, and free from McAfee's lien, unless the plaintiffs in the execution were chargeable with notice of his lien or had notice.

There was nothing on the face of the title papers revealing its existence. There was no possession by tenant or otherwise suggesting inquiry — no neighborhood rumor directing to the facts. In short, there is no evidence affecting the judgment creditors with notice, unless the law presumes it, and throws the burden of proof upon the party specially denying notice to prove its *non-existence* as a fact.

In McAlpine *v.* Burnet, 23 Tex., 651, this question is discussed, Roberts, Justice, saying: "The question is, Must the last vendees, Hamlet and Perry, assume the burden of proof, and allege and prove that they are *bona fide* purchasers for a valuable consideration paid before notice of the lien; or must McAlpine & Co., to follow their lien, allege and prove that they (Hamlet and Perry) had notice, or had not paid a valuable consideration for the lot? We are of opinion that the burden rests upon the party alleging the lien. They are seeking to set up and enforce a tacit equity against persons standing on a legal title complete and fair on its face; and, therefore, they must assert and establish the facts which constitute their equity." See, also, Barnes *v.* Jameson, 24 Tex., 365; Willis *v.* Gay, 48 Tex., 469; Robertson *v.* Guerin, 50 Tex., 323; Rawles *v.* Perkey, 50 Tex., 315.

The principle is only the elementary rule that the burden of proof is on the party alleging the fact. 1 Greenl. Ev., sec. 74.

Still having exhibited on the trial the legal title, plaintiff, to defeat it, was required to establish the prior equity.

The attorneys for the judgment creditors were called as witnesses by Still, and, to the extent of their knowledge, proved innocence or want of notice on the part of the plaintiffs in execution. This was unnecessary.

One of the plaintiffs, Barton, was not examined as a wit-

ness, and his absence is relied on to show a defect in Still's evidence of want of notice. But holding, as we do, in the absence of any fact charging the execution creditors with notice of record or in the chain of title that the burden of proof is upon the plaintiff who is asserting an equity to defeat the legal title, we also hold that the failure to call Barton (one of the execution creditors) was not fatal to the title purchased at the execution sale.

The levy being a lien, the execution creditors not being chargeable with notice, there being no actual notice proved on them, Still's knowledge of the lien did not prevent his taking a good title by his purchase. Grace v. Wade, 45 Tex., 527; Borden v. McRae, 46 Tex., 401; Grimes v. Hobson, 46 Tex., 416; Catlin v. Bennet, 47 Tex., 170.

There was no error in holding that Still took the title discharged from the lien.

The fifth assignment, relating to the action of the court in overruling the application for continuance, has already been disposed of.

The sixth assignment is fatal to the judgment.

The statement of facts shows that the note declared on was for $457.95, with ten per cent. interest from March 20, 1874. The trial was July 23, 1879, and the judgment was only for $229.08 and costs.

We have had some trouble in being satisfied that we ought to notice this sixth assignment. It comes in a paper separate from the transcript — certified by the clerk below to have been filed before the transcript was taken from his office. The clerk should have incorporated it in the transcript. But no objections were filed, as appear to be required by rule 8 of rules for supreme court. The assignment was discussed in appellant's brief, filed under the rules in the office of the district clerk. We regard objections as in effect waived.

The condition of the transcript is such that we deem it necessary to notice this error as manifest in the record.

We call the attention to the want of citation and service on any parties. Plaintiff and intervenor, alone in court, liti-

gated their rights, and the court adjudicated the rights of others not in court.

Special guardians should be appointed for the minors.

For the error in the amount of the judgment and the want of service upon parties whose rights were adjudicated, our opinion and award is that the case be reversed.

REVERSED AND REMANDED.

[Opinion delivered November 24, 1879.]