# MILAM COUNTY V. RACHEL ROBERTSON ET AL.

ON THE 30th of March, 1877, a motion was filed, by parties claiming land in privity with appellees, to vacate and annul a judgment rendered on the 28th of May, 1870, which reversed and reformed a judgment of the District Court, and to have the case redocketed, as though no final judgment had been rendered. In support of the motion, it was shown by affidavits that two of the appellees were dead when the judgment was rendered, which fact had been suggested and noted on the minutes of the court before judgment; and that judgment was rendered without making the legal representatives of the deceased, parties. The records of the Supreme Court disclose that the cause was submitted to the Supreme Court by the parties two years after the suggestion of death : *Held*—

1. On the adjournment of a term of court, at which a final judgment has been rendered in a previously pending cause, the jurisdiction of the court over the case on its merits is exhausted. If there is an error in the judgment, and the court rendering it possesses no appellate revisory power over its final judgments, the error can only be corrected by some superior tribunal, to which revisory power has been committed.

2. When a judgment is based on facts which the court is warranted in presuming, from the record, to exist, and upon the existence of which the jurisdiction of the court or the validity of the judgment depends, as, for instance, that an ostensible party to the proceeding was living, when he was, in fact, dead, such judgment, whether absolutely void or voidable, may be set aside and corrected on a writ of error *coram nobis* by the court rendering it.

3. But when the error is of law, though touching a matter of fact apparent upon the record, and assignable as error, and is directly passed upon or affirmed by the court, it can neither be reversed or corrected on a writ of error *coram nobis*, nor by motion after the adjournment of the term at which it was rendered; in such case relief can only be had, if at all, by appeal or writ of error to a superior and supervisory tribunal.

4. A void judgment is a nullity, whether invoked before the tribunal which rendered it, or any other, and though it may have been supposed by the court rendering it to exhaust its jurisdiction over the subject, will not, either in law or fact, curtail the power of that court over matters supposed to have been determined by it, when its jurisdiction is afterwards properly invoked.

5. A judgment in favor of or against a party who is dead, unless his death is shown by the record itself, is at most only a ground for avoiding the judgment, and does not render it absolutely void.

Whether the same rule should not apply even when the death is shown by the record, *quere?*

6. The error of the Supreme Court set forth in the motion in this case, if error at all, was one of fact, and not of law, and it is within the power of the court, in such cases, on motion, supported by affidavit, to revoke the final judgment and recall the mandate of a former term, whether such judgment was absolutely void for want of jurisdiction, or voidable for error in fact, if such fact was unknown to the court, or it can be supposed to have acted unmindful of it. (As to the correctness of this proposition, Associate Justice Moore expresses his doubts.)

7. Whether the alleged error of the Supreme Court in rendering the judgment in this case was one of fact or of law, an application to correct it comes too late, after a delay of seven years, especially when the counsel who make the motion were present in court at the rendition of the judgment, and made no objection to the submission of the case, or its decisions.

8. To sanction such laches by sustaining the motion would set a dangerous precedent, which would be calculated to open the door to fraud.

Associate Justice Moore expressed it as his individual opinion—

1. That it would be a strained and perverted construction of the language of the Constitution to say that the appellate power of the Supreme Court embraced its own judgments.

2. That the final judgment of the Supreme Court upon the merits of a cause are as binding and conclusive on the Supreme Court, after the adjournment of the term at which it is rendered, in reference to the case as presented by the appeal or writ of error, as upon the court below. While this is true, the power of the court is not doubted to amend and correct its entries, on proper application, so as to make its judgment conform to its obvious intent, and the facts of the case as shown by the entire record; or to correct clerical misprisions, or an entry made by fraud or mistake of a judgment never in fact rendered; or to revoke an absolutely void judgment, whether the fact is apparent on the face of the record, or is shown on motion supported by affidavit.

3. If injustice would sometimes result from the want of authority in the court to revoke its final judgments at a subsequent term for error in fact, this is equally true when the court has fallen into an error of law.

4. The sole and entire scope and purpose of a writ of error *coram nobis*, is to revoke a previous judgment, on account of some matter of fact not shown by the record. If the fact relied upon to show the invalidity of the judgment is exhibited in the record, inasmuch as it there appears that the court has given an erroneous

judgment upon the record, the error is of law, and not of fact; and inasmuch as the error to be assigned by the writ could not have been previously at issue, its truth may be denied by the other party. If denied, a trial by jury might be demanded, and the law makes no provision for such a trial before the Supreme Court.

MOTION to vacate a judgment of the Supreme Court. The judgment sought to be vacated was rendered seven years ago, and in a suit instituted by Milam county, to recover certain school lands. The record discloses the following facts:

1. The suit was brought by Milam county, February 24, 1864, against the following-named parties, viz.: Rachel Robertson, Joshua Hightower, Jack Wright, William Gafford, Robert Preters, Aaron Bond, Rachel Maxmie, Calaway Sanders, Haley Sanders, and Abel Sanders. Defendants answered.

2. Abel Sanders was granted permission to intervene as guardian of the minor heirs of J. S. Sanders, viz.: William Sanders, Hugh Sanders, Christopher Sanders, and Joseph Sanders. He claimed one hundred and forty-two acres as the Edmond Bond pre-emption, and one hundred and sixty acres as the Aaron Bond pre-emption.

3. April 5, 1867, Mrs. Robertson appeared as Mrs. Rachel Taylor, alleging her marriage with Taylor, and his abandonment of her.

4. April 8, 1867, Newman Osborne intervened, setting up claim to one hundred and sixty acres.

5. On the same day, Abel Sanders amended, setting up claim to the W. J. King one hundred and sixty acre pre-emption.

6. Same day, Mrs. Rachel (Robertson) Taylor amended, setting up claim to the Henry Bond 160 acre pre-emption.

7. Same day, Aaron Bond amended, claiming the Benj. Bond 160 acre pre-emption. It was agreed that the pleadings of H. Osborne apply without writing same, and Abel Sanders, guardian, plead anew, claiming as in his original. These were the proceedings up to trial below.

8. A verdict was returned:

For Abel Sanders, for the  W. S. King 160 acres,
"  Rachel Taylor,   "   "  Henry Bond 160 acres,
"  Aaron Bond,      "   "  Benj. Bond 160 acres,
"  H. Osborne,      "   "  T. J. Reilly 160 acres,
"  Abel Sanders, (guardian)  for the Aaron Bond
          160 acres,

and for the plaintiff, for the balance of the league. Judgment was rendered, quieting the title, and for costs; and for plaintiff, the balance of the land, and for costs against all the other defendants.

9. Motion for new trial, by plaintiff, was overruled. Errors were assigned, and an appeal bond made payable to Abel Sanders, Rachel Robertson (Taylor), Aaron Bond, H. Osborne, and Abel Sanders, guardian.

10. Abel Sanders, guardian, prosecuted a writ of error in behalf of heirs (142 acres being lost.)

The application to set aside and vacate the judgment rendered by the Supreme Court was filed by Wm. Howard, Wm. A. Leach, Sarah Bond, (widow of Aaron Bond,) Wm. D. Sanders, in his own right, and as guardian for Hugh and Lee Sanders, and I. M. Case, guardian for Joseph L. Sanders, Mahala Sanders, C. L. Sanders, A. R. Sanders, Jesse F. Nutt, and B. H. Shands, March 30, 1877.

They alleged: (1.) That Newton Osborne died January, 1870. (2.) That the Legislature was memorialized for relief July 21, 1870. (3.) That a new suit below was filed April 7, 1876.

The extracts from the minutes of this court show: (1.) Death of Osborne suggested, and parties ordered, April 29, 1868. (2.) Submitted in briefs, April 23, 1870. (3.) Reversed and reformed, April 27, 1870. (4.) Death of Amos Bond suggested, May 28, 1870. (5.) Judgment of April 27 re-entered, May 28, 1870.

*Hood & McCall,* for the motion.—In this cause, we have,

as the record affirmatively shows, a joint action and a joint recovery—a joint judgment against all the appellees, while the record itself shows that two out of the four were dead at the time of its rendition, May 28, 1870. We have given, as we hope, in law, a satisfactory excuse for not presenting this application at an earlier date. We now ask this court to grant the application, and in support, merely refer the court to a few of the many decisions on the same question. (See Bissell *v.* Lavaca, 6 Tex., 54, 55; Alexander *v.* Barfield, 6 Tex., 400; Martel *v.* Hernsheim, 9 Tex., 294; Mills *v.* Alexander, 21 Tex., 162; Moke *v.* Brackett, 28 Tex. 446.)

Counties were allowed, under the acts of 1839 and 1840, to acquire four leagues of land each, for school purposes, but, as conditions precedent, counties, like individuals, had to do certain things: they had to have their surveys made, and their field-notes recorded and returned to the General Land Office. The last act named—the act of February 5, 1840, taken in connection with other legislation, particularly an act passed the same day, (February 5, 1840,) concerning surveys and field-notes—made the chief justice of Milam county the custodian of the field-notes to her school lands. (It was so as to other counties, also.) The acts referred to made it the express duty of the chief justice to return to the General Land Office all field-notes that came into his possession, that patents might issue, &c. By express legislation, contained in the acts referred to, the field-notes of all surveys within the State had to be so returned. There was no exception or exemption whatever. Then, afterwards, February 10, 1852, another act was passed expressly making all field-notes "null and void," not returned to the General Land Office by the 31st day of August, 1853. Now, this court, "aforetime," repeatedly held, that the act of February 10, 1852, embraced all field-notes; that none were exempt within the bounds of the State; that even field-notes belonging to infants were not exempt from the operation of the law. (See Stewart *v.* Lapsley, 11 Tex., 42; Upshur *v.* Pace, 15 Tex., 531.) Now,

the record shows, that Milam county had the league of land (a small part only of which is in question) surveyed, December 23, 1849. The record also shows, that her field-notes were never recorded until June 9, 1858, and that they were never returned to the General Land Office until June 16, 1858. The transcript further shows, that the pre-emptors settled on the land in 1855; that they were living on the land at the date (August 26, 1856) of the passage of the act providing for the settlement and sale of the Mississippi, &c., reservation; that they afterwards fully complied with the requirements of that act—had their claims surveyed, field-notes recorded and properly returned to the General Land Office, and tendered the required fifty cents per acre and patent fees. Now, we submit, that the land was most unquestionably vacant public domain at the date of the passage of the act of August 26, 1856; that, by its terms, a sale to the settler was intended; and that this act, by its very terms, gave "all persons" living on vacant land within the reservation at the date of its passage a preference pre-emption privilege.

We say the land was unquestionably vacant August 26, 1856, because the express legislation of the State, contained in the act of February 10, 1852, made the survey and field notes of Milam county absolutely "null and void."

Now, it will not do to assume as law, that a county is a corporation that stands above and out of the reach of ordinary legislation. "It lives only at legislative will." (See Bass *v.* Fontleroy, 11 Tex., 704; City of Galveston *v.* Menard, 23 Tex., 406; 8 How., 569; 10 How., 511.)

In 1860, the Commissioner of the General Land Office illegally (when no relocation had been made by Milam county) issued to her a patent covering the houses and improvements of the appellees. Milam county subsequently sued, and, in this court, obtained the judgment now sought to be vacated.

It will be borne in mind that the right of the pre-emptors

vested by the very terms of the act of August 26, 1856, on the very day of its passage, for they were then living on the land. Such were the express provisions of that act.

The court rendering the judgment sought to be vacated, assumed that the pre-emptors must have had notice of the survey of Milam county; because, as stated in the opinion, the surveying of four leagues in one county (I quote from memory) was of too notorious a character not to be known by the people of the county generally; whereas, the truth is, that no white man lived west of the Brazos river, in all that upper region, until 1858, some six years after Milam county had her survey made.

*Terrell & Walker,* against the motion.

1. The court had jurisdiction of the case by the perfecting of the appeal bond. The judgment rendered after jurisdiction had once attached, was *not* a *nullity* then.

2. If a nullity, it could do no hurt to anyone, and such fact could be as well pleaded and shown in the suit below, as in this court now.

3. If a nullity, it could only be so as against those not before the court; as to the others, they had nothing of which to complain.

4. The verdict and judgment were final as to all who did not appeal, and also as to all parties who were before the court on final rendition of the decree in the Supreme Court. The doctrine that a judgment even void as to one, is void as to all, has no application where, though jointly sued, they are severally liable; or, as in this case, where they claim distinct and separate interests. (Buffum *v.* Ramsdale, 55 Maine, 252; Freeman on Judgments, sec. 136.)

5. As to the parties in this motion claiming as the heirs of J. L. Sanders, and represented in the original suit by Abel Sanders, guardian, (viz., William, Hugh, Christopher, and Joseph Sanders,) being before the court below, by petition as intervenors, in the judgment below recovering, and by

writ of error seeking, seven years ago, to recover the 142 acres claimed by them and lost, they cannot complain of not being heard. They intervened below; they sued out a writ of error; why should they be again heard?

6. Abel Sanders, in his own right, and Mrs. Rachel (Robertson) Taylor were before the court. The judgment as to them was a finality.

7. As to those claiming as heirs of Newman Osborne, (the appeal was perfected and the intervention was in name of II. Osborne,) the death of the ancestor was suggested and case continued, to make parties. The minutes show a subsequent act of the parties, submitting the case. The record shows an act of parties. Now, there is no mistake or fraud suggested. The submission was nearly two years after the death was suggested, and the order to make parties entered. (Suggestion, April 29, 1868, and case submitted 23d April, 1870.)

8. April 27, 1870, the judgment was reversed and re-formed; May 3d, 1870, a rehearing was granted. Now, is it fair to the court that the parties appear and obtain a rehearing, never bringing it to the attention of the court that parties were wanting?

Is it not fair to presume that the honorable attorney who represented the appellees below, on the appeal, and now on the motion, would have seen to it, that the parties he was representing were before the court? Such a presumption cannot be repelled by the mere absence from the papers of the citations, or appearance, making parties. The known carefulness and shrewdness of the attorney forbid such an inference; nor can his ignorance of the facts be presumed, for he lived close to the parties and came here to represent them.

9. This motion for rehearing was filed after the death of both of the parties; and after the rehearing, the death of Bond is suggested, but the court, thereafter, reinstated their original judgment—in effect, setting aside their order allow-

ing a rehearing. Why was this done? It is held, that a plea in abatement setting up the death of one of the parties, "if overruled, estops the party who presented it, from again urging those matters in the same court; for in this case it is evident the court misapprehended the law but understood the facts." (Hawkins v. Bowie, 9 G. and J., 428; Bridendolph v. Trellers' Adm'r, 3 Md., 325.)

Why shall not the same rule apply after a suggestion of a death made by parties properly before the court? Why ask the court to correct a judgment, after seven years, on account of facts known when it was rendered?

This motion is made in behalf of parties claiming by descent, and also by purchase, parts of the land from the original defendants.

This involves an original investigation, ascertaining heirship, validity of conveyances, &c. Such proceedings were refused in Egery v. Power, 38 Tex., 381, 382.

10. If the proceeding was a nullity, a court of original jurisdiction must be resorted to, to ascertain the facts upon which the nullity depends.

11. It is evident that all papers on file below are not in the record.

No motion for a rehearing, or argument thereon, appears. As these have been mislaid, may not an appearance by the counsel for the heirs have also been mislaid? Is not this presumption more reasonable than that this court would assume to render judgment against parties not before it, and that after its attention had been called to the necessity for new parties?

The record of the proceedings—the docket—should show absolute verity. The heirs of Osborne and of Bond do not make affidavit that they were not served with citation, or were not represented.

Nor is it now shown in the petition to set aside the judgment, who are the heirs and legal representatives of Osborne and of Bond; nor do such representatives appear as such

heirs and legal representatives. Will the Supreme Court undertake to grant a rehearing in behalf of strangers to the record, assignees of parties to the record litigating?

MOORE, ASSOCIATE JUSTICE.—This is a motion, filed during the present term of the court, by parties claiming in privity with the appellees, to vacate, annul, and set aside a judgment rendered May 28, 1870, reversing and reforming a judgment of the District Court of Johnson county, from which the appeal was prosecuted, and to have the case placed upon the docket and proceeded with as if no final judgment had been heretofore pronounced by the court.

It is insisted that this judgment should be treated by the court as altogether inoperative and void, by reason of the fact that it is shown by the affidavits accompanying the motion that two of the appellees were dead when the judgment was rendered, and because, from an inspection of the record, it appears that their deaths had been suggested and noted upon the minutes of the court; but, notwithstanding such suggestion, it was pronounced without the heirs and legal representatives of said deceased appellees having been made parties to said appeal, or any notice whatever having been given them of the pendency of suit in this court.

On the adjournment of the term at which a final judgment has been rendered in a previously-pending cause, the jurisdiction or power of the court over it on its merits is unquestionably exhausted. If there is an error in such judgment, and the court by which it was rendered has appellate power for its correction, its jurisdiction for this purpose can be invoked by the appropriate proceeding for its review and correction. But, if it possess no appellate or revisory power over its final judgments, if there should be any error in them, they can only be corrected by some superior tribunal to which such revisory power has been committed. When a judgment is based upon facts which the court is warranted in presuming, from the record, to exist, and upon the exist-

ence of which the jurisdiction of the court, or the validity of the judgment depends, as, for instance, service upon the defendant, or that a party to the suit is insane, or an infant, or a married woman, or has died before verdict; and when the judgment was rendered by the court while ignorant of and uninformed as to the real facts; and when it should be inferred it acted upon the supposition that its jurisdiction had attached, or that the parties were living and competent to appear as litigants,—such judgment, whether absolutely void or merely voidable, may be set aside or corrected on a writ of error *coram nobis* by the court rendering it. But, where the error is of law, though touching a matter of fact apparent upon the record, and assignable as error, and is directly passed upon or affirmed by the court, it can neither be reversed nor corrected, on such writ, nor by motion, after the adjournment of the term at which it was rendered. In such cases, relief can be had, if at all, only on appeal, or by writ of error to a superior or supervising tribunal. (Freem. on Judg., sec. 94.)

When, however, the judgment is not merely erroneous, but an absolute nullity, it can have no binding force or effect, either in the tribunal in which it is rendered, or in any other in which it may be brought in question. And such void judgment, though supposed by the court, when rendered, to be final, will neither, in law or fact, exhaust or put an end to its jurisdiction or power over an action properly pending before it. Unquestionably, therefore, the court may, at least, until such time has elapsed as will warrant the presumption of a discontinuance or abatement of the action, vacate its entry, and recall any process which may have issued thereon, and proceed with the cause to its final and proper termination. (Freem. on Judg., sec. 98; Martel *v.* Hernsheim, 9 Tex., 294; *Ex parte* Crenshaw, 15 Pet., 119; The Bank of the United States *v.* Moss, 6 How., 31.)

In this case, the death of two of the appellees was suggested on the record before the judgment was rendered;

and, as the suggestion was not traversed, it must be taken as true. If, therefore, it can be said that a judgment rendered against a party who dies after the jurisdiction of the court has attached, and before a final judgment, is an absolute nullity, it would, unquestionably, be within the power of the court to vacate its entry and revoke its judgment in this case. The decided weight of authority, as well as the intimation by this court, in its opinions, in which the subject has been referred to, seem fully to justify the conclusion that a judgment in favor of or against a party who is dead, unless his death is shown by the record itself, is, at most, only a ground for avoiding the judgment, and does not render it absolutely void. And, indeed, it seems to be by no means certain that anything more can be said, even where it is thus shown—the difference being merely as to means by which the error in the two cases can be shown and corrected. (18 Tex., 753; 21 Tex., 154; 24 Tex., 468; 28 Tex., 443, 755; but see, also, 6 Tex., 54; 9 Tex., 294; 16 Tex., 615; Freem. on Judg., sec. 153.)

It is, however, a matter of no moment in this case whether the judgment is void or voidable, as the court, in the opinion of a majority of its members, hold that the error in the judgment, whatever may be its effect, is an error in fact, and not an error in law; and that it is within the power of this court, in such cases, in the exercise of a like power to that unquestionably possessed by the district court, on a writ of error *coram nobis*, or by a proceeding in the nature of such writ, on motion, supported by affidavits, to revoke a final judgment and recall the mandate of a former term, whether such judgment is absolutely void for want of jurisdiction, or voidable for error in fact, if such fact was unknown to the court, or it must be supposed to have acted unmindfully of it. I take the liberty, however, to say, that I have grave doubt as to whether this court can revoke a final judgment rendered at a former term, for error in fact, however obviously it may be made to appear that the court was, in truth, igno-

rant of, or mistaken as to the existence of the fact in question when its judgment was rendered.

The jurisdiction of this court is derived from the Constitution, and cannot be extended beyond the limit to which it is thereby restricted. The appellate power of the court extends only "to civil cases of which the District Courts have original or appellate jurisdiction." It will be readily conceded, that it is the judgment of the District Court to which the revisory jurisdiction of this court is thus limited, and that it does not extend to all cases of which the District Court might take cognizance, irrespective of the fact, whether the judgment sought to be reviewed was rendered by that court or not; otherwise, we should be forced to say that this court has appellate jurisdiction over all the judgments of other courts, in those cases where such courts and the District Courts possess concurrent jurisdiction; and it would, it seems to me, be a strained and perverted construction of the language of the Constitution to say that the appellate power of this court embraces its own judgments, because the judgment under review is one to which the jurisdiction of the court extended in the first instance; nor can I see anything in the statutes regulating the practice of this court, which seems to look to a review of its decisions of a former term, unless it should be said that this is done, to some extent, where a judgment, without reference to its merits, is set aside and the record permitted to be filed. (Paschal's Dig., art. 1590.) I know of no exception to the rule, that its final judgment upon the merits, after the adjournment of the term at which they are rendered, is as binding and conclusive on this court, on the case as presented by the appeal, or writ of error, upon which the judgment was pronounced, as upon the court below.

I do not, of course, doubt the power of the court, on proper application, to amend and correct its entries, so as to make its judgments conform to its obvious intent and the facts of the case, as shown by the entire record, or to correct clerical misprision, or an entry upon its minutes by fraud, or a judg-

ment never in fact rendered by the court, or to revoke an absolutely void judgment, whether the fact is apparent on the face of the record, or it is shown on motion, supported by affidavits.

It is not to be denied, if this court may not revoke its judgment, after the adjournment of the term, for error in fact, manifest and unavoidable injustice may be done and injury result to parties affected by such judgment, unless it is within the power of a court of equity, as we think it is, to grant relief against the judgment, upon proof of the fact by reason of which it is claimed this court may review and revoke its previous judgment. (Freem. on Judg., secs. 486, 495.) But if it was conceded that the law affords no means of relief from an injury resulting from such erroneous judgment, it must be remembered, that this is by no means the solitary instance where wrong and injustice result, in special cases, and to a few individuals, from the application and observance of broad and general principles, in the administration of law, which experience, from the time whereof memory runneth not to the contrary, has demonstrated to be necessary to prevent fraud, guard the fountains of justice from pollution through perjury, and thus accomplish the true object of the law, whereby right and justice will be done according to the truth and particular facts of each case, far better than if the court should endeavor to reach the supposed justice of a particular case, without regard to those broader and more general principles. If injustice should sometimes result from the want of authority in the court to revoke its final judgments, at a subsequent term, for error in fact, this is equally true where the court has fallen into an error of law; and I venture to affirm, on the authority of their subsequent opinions, that judgments of the most enlightened and learned courts of last resort are quite as often erroneous in law as in fact; and certainly far greater injury results from error of the former character than the latter.

It is not questioned that this power has been exercised by

the courts of last resort in several of the American States; but it seems, from such examination as other demands upon my time has enabled me to make, that in by far the greater number of these courts it is not to be inferred that any such power is either exercised or claimed. And it is possible that in some instances, where it has, the action of the court may have been induced by the belief that the error of fact complained of rendered the judgment not only erroneous and voidable, but absolutely void. It will evidently take only a slight examination of the decisions in the different States, to show that they are by no means in strict accord, either in respect to the rules of practice by which the issue of the writ of error *coram nobis* should be governed, or the cases in which it may be appropriately resorted to for relief. (Watson *v.* Mercer, 17 Serg. & W., 343; Shoffet *v.* Menifee, 4 Dana, 150; Lightfoot *v.* The Bank, &c., 4 Dana, 492; Latham *v.* Hodges, 13 Ind., 267.) · It is, however, as I understand the decisions upon the subject, a fundamental proposition, that the sole and entire scope and purpose of the writ is to revoke the previous judgment on account of some matter of fact not shown by the record. If the fact relied upon to show the invalidity of the judgment is exhibited in the record, inasmuch as it there appears that the court has given an erroneous judgment upon the record, the error is of law, and not of fact. And, inasmuch as the error to be assigned by this writ has not been, and, indeed, from its very nature could not have been, previously an issue, its truth may be denied by the other party. And if it should be, I know of no·rule upon which a trial upon it by a jury, if desired, can be denied. But certainly no trial of this kind can be had in this court. And upon this ground it was held by the Supreme Court of Pennsylvania, that the writ could not be brought to that court, when sitting to·transact business outside the limits of the city of Philadelphia. (17 Serg. & W., 343, *supra.*)

The proper manner of proceeding in error *coram nobis* is clearly, and, as it seems to me, correctly indicated by the

Supreme Court of Tennessee, in the case of Crawford *v.* Williams, 1 Swanst., 341. I quote from the synopsis of the reporter:

"To state by petition the facts and grounds upon which the party seeks to obtain the writ of error *coram nobis.*

"To give the defendant in error notice to appear before the court.

"The court to grant the writ upon the motion of the petitioner. (A *supersedeas* may be granted without notice of the application.)

"The writ being granted, the plaintiff in error to make a formal assignment of errors, in the nature of a declaration, stating the errors in fact relied upon.

"To which the defendant may demur, or plead *in nulla est eratum*, and thereby admitting the facts, put in issue matters of law to be determined by the court, or he may plead any matter legitimate and necessary as a defense upon the facts.

"To which pleading of the defendant, the plaintiff may reply or demur, &c.

"If the pleading results in an issue of fact, it must be tried by a jury.

"The judgment, if for the plaintiff in error, is that the former judgment be recalled, revoked and annulled; if for the defendant in error, that it be affirmed."

The Constitution gives this court "the power, upon affidavit, or otherwise, as by the court may be thought proper, to ascertain such matters of fact as may be necessary to the proper exercise of its jurisdiction." But certainly the ascertainment of a fact necessary to the proper exercise of the jurisdiction of the court, is an altogether different inquiry from the determination of an issue of fact, in a case in which the court has jurisdiction, and which can in no way be affected by its determination the one way or the other. When parties are seeking to have a judgment recalled as void for want of jurisdiction by reason of the existence of a fact outside of the record, the court may, no doubt, ascertain and determine the

truth of the matter at issue on affidavits.    But if it may in this way ascertain and determine an issue of fact upon which its judgment, and not its jurisdiction depends, the warrant for it, evidently, must be sought elsewhere than in this clause in the Constitution.

It also is indisputable, that the writ of error *coram nobis* does not lie in England to the House of Lords—the court of dernier resort—and I have found no case in which it has been held to lie in the Supreme Court of the United States; and so strictly has the rule, that its judgments cannot be impeached or inquired into after the adjournment of term, been adhered to by that court, as to be held that it is too late after the court has given judgment upon the merits, and a remand ordered to the court below, to call in question the jurisdiction of the court, either in the court below or in the Supreme Court, on its being brought up on a second writ of error, and that, too, where the defect was apparent upon the face of the record. (Skillern *v.* May, 6 Cranch, 267; Washington Bridge Co. *v.* Stewart, 3 How., 413.)

But if this court may review its judgments of a former term, and revoke and recall them, if erroneous for error in fact, it would be of no moment, as I think in this case, the error for which we are asked to recall the former judgment is not, in my opinion, an error in fact, but in law.    The defect pointed to in the motion to revoke is as distinctly shown by the record as in the motion and affidavits upon which we are now asked to revoke this judgment.    The essential fact of the death of two of the appellees was apparent upon the face of the record when the judgment was rendered.    If a judgment against a party who is dead is erroneous, the error in this case is as apparent upon the record as it can otherwise be shown; and if this judgment can be recalled, unless it is held to be absolutely void, I see no reason why the court might not do the same in any case where it can be seen from the record that it has inadvertently fallen into an error.    If so, evidently the finality of our judgments rests merely upon

the discretion of those who may succeed us. (Freeman on Judg., sec. 96.)

Although I cannot agree with the majority of the court, that the error in the judgment (unless it is thereby absolutely void, which it is not necessary at present to decide) is of a character which may be reviewed and revoked on an application such as is here presented, we all agree that the application to revoke it has not been made in time to receive our favorable consideration. It is said by the Supreme Court of Tennessee, that the statute preserving judgment liens while execution is stayed by writ of error, will be held to include the writ of *coram nobis* as well as *coram vobis.* (Planters' Bank *v.* Union Bank, 5 Humph., 504.) And it has been held by this court, that an application to the District Court to set aside a void judgment and proceed with the case, comes too late, unless made within the time allowed for a bill of review. (Weaver *v.* Shaw, 5 Tex., 286.) Such writ is also held by other courts not to be a writ of right, but to be within the discretion of the court; and a party seeking to avail himself of such remedy must make it appear that it was by no fault or neglect of his that the error of fact assigned was not made to appear at the former term. (Bingham *v.* Browne, 4 Sneed, 432; Higbie *v.* Comstock, 1 Denio, 652; Tyler *v.* Morris, 4 Dev. & Bat., 487.) And we are of the opinion that, after so great a delay in making the application as there has been in this case, it should be refused. If the judgment is absolutely void, it must be so held, as readily in any other tribunal as here; and if merely voidable, it should have been moved at an earlier day. The counsel who present this application were in court when the error of which they complain occurred; yet they then made no objection, either to the submission of the case or to its decision by the court, nor have they shown us any valid or satisfactory reason for their silence for so long a time. There certainly should be some limit to the time within which the court will reopen litigation which, with the apparent assent of the parties, has

been seemingly finally disposed of and ended. Innocent third parties may have bought and paid for the land on the faith of the judgment; and if the case can be reinstated and proceeded with anew, it might work the grossest injustice to other parties, who would have much more right to complain than those who urge this motion. To sanction, by sustaining the motion, such laches as is exhibited in this case, if the motion should have been granted, if presented in proper time, would, we think, set a dangerous precedent, which would be calculated to open the door and invite to fraud.

    The motion is overruled.

OVERRULED.