RICHARD T. WILLIAMSON ET ALS. V. GEORGE W. WRIGHT.

(Case No. 3153.)

1. JUDGMENT — LIMITING OR EXTENDING ITS EFFECT BY THE PLEADINGS — ARBITRATION.— A judgment erroneous for want of issues by the pleadings will be corrected on appeal, but it is not void. The extent of a decree, within the jurisdiction of the court rendering it, will be determined by its terms alone, and it cannot be restricted in a collateral attack by the pleadings, nor can the preliminary proceedings be examined to extend its effect or enlarge its meaning. Where the plaintiff sued to foreclose a mortgage on several tracts of land, including *half* of a third league survey, and during the progress of the case the parties submitted the matters to arbitrators, who awarded the *whole* of the third league survey to the plaintiff, and judgment was rendered accordingly, the decree passed the title to the land. Freeman on Judgments, 135; Weathered *v.* Mays, 4 Tex., 388; Tadlock *v.* Eccles, 20 Tex., 791; Withers *v.* Patterson, 27 Tex., 491; Vogelsang *v.* Dougherty, 46 Tex., 472; Taylor *v.* Snow, 47 Tex., 465; Guilford *v.* Love, 49 Tex., 740; Kendall *v.* Mather, 48 Tex., 598.

2. MISTAKE — CORRECTING JUDGMENT BY PAROL.— An application to correct a judgment by parol testimony on the ground of mistake, made twenty-six years after the alleged mistake occurred, with no allegation of ignorance, comes too late. Where it is sought to correct a mistake in a judgment by application in the court where it occurred, the application, by analogy to a bill of review, would be limited to two years from the time of the discovery of such mis-

take. Milam Co. v. Robertson, 47 Tex., 235; Weaver v. Shaw, 5 Tex., 289; Connolly v. Hammond, 51 Tex., 647; Smith v. Fly, 24 Tex., 352; Kuhlman v. Baker, 50 Tex., 636; Munson v. Hallowell, 26 Tex., 475; Alston v. Richardson, 51 Tex., 6; 2 Story, Eq. Jur., § 1521a.

3. OUTSTANDING TITLE — MORTGAGE.— A mortgagor, notwithstanding the terms of the conveyance, remains the real owner of the fee, and being entitled to the possession of land mortgaged, after as well as before breach of condition of defeasance, the mortgage cannot be pleaded as an outstanding title. Johnson v. Byler, 45 Tex., 509; Burgess v. Millican, 50 Tex., 401; Duty v. Graham, 12 Tex., 434; Mann v. Falcon, 25 Tex., 275; Morrow v. Morgan, 48 Tex., 308; Peters v. Clements, 46 Tex., 115; Wright v. Wooters, 46 Tex., 380; Sample v. Irwin, 45 Tex., 567; Moreland v. Barnhart, 44 Tex., 283.

APPEAL from Lamar. Tried below before the Hon. John C. Easton.

May 28, 1872, Williamson and his sister, Mrs. Campbell, brought an action of trespass to try title in district court of Lamar county, against Wright and Garnet for a tract — one-third league — of land patented to Williamson & Bowerman, assignees of Thomas Talbert. Plaintiffs claimed as heirs of Isaac C. and Emily Williamson, their parents. The petition further alleged that the land had been awarded to them in an arbitration, in which the defendant was one of the arbitrators, and that the defendants were asserting claims to the land, with full notice of plaintiffs' title.

By an amendment plaintiffs set up title patent to Williamson & Bowerman, their deed to A. Mittower, arbitration and decree against Mittower for the land, the award being of date July 13, 1848, and confirmed in district court October, 1848.

The defendants, July 16, 1872, demurred and pleaded general denial.

April 20, 1875, they amended, alleging ownership of the west half of the Tolbert survey; alleging that September 29, 1840, Williamson & Bowerman had deeded the Talbert one-third league to A. Mittower, and that on same day Mittower executed mortgages, one to Williamson, and one to Bowerman, each for half, Bowerman's for west half, to

secure the purchase money. That March 22, 1849, Williams, as administrator of Bowerman, and as attorney in fact for Mittower, conveyed by deed to Wright the said west half of the Talbert survey.

That November 4, 1851, Williams, as administrator of Bowerman, obtained a judgment foreclosing a mortgage against Mittower, under which the sheriff sold it, and Williams had bought it in for Bowerman's estate.

And that July 2, 1851, Wright had intervened in a suit in the district court of Lamar county, between Bowerman's heirs and Williams, the administrator, setting up his (Wright's) claim to this land, and that by decree in said case his purchase was confirmed.

Defendants further pleaded, that in the decree rendered upon the award, under which plaintiffs claimed, was a mistake; that in the suit in which the decree was rendered but one-half was claimed; that the arbitrators did not intend to allot the entire third league, but only the east half thereof, to the Williamson heirs; that the decree was intended to adjudge the east half and no more.

Defendants also pleaded limitation of five and ten years.

To the amended answer alleging mistake in the decree relied on by plaintiffs, they excepted for causes —

1. It shows that defendant, Wright, purchased the land with notice, actual and constructive, of the title of plaintiffs.

2. A judgment of a court of competent jurisdiction is conclusive until set aside or reversed.

3. It seeks to set aside a solemn judgment of Lamar district court in a collateral proceeding.

The exceptions were overruled.

On the trial the facts as to the orders, decrees, deeds, etc., and their dates, as pleaded, were proved.

The plaintiffs read in evidence patent for the land granted to Williamson & Bowerman, assignees of Thomas Talbert. They also proved that they were the children and only heirs of Isaac and Emily Williamson, deceased.

It was shown that on September 29, 1840, Williamson & Bowerman executed to A. Mittower their warranty deed

for the Talbert one-third league certificate and location, the consideration, $490.30, being recited as paid.

On same day Mittower executed to Isaac Williamson a mortgage upon several tracts of land and land certificates, to secure $7,585.20, the aggregate of four notes of same date, and equal in amount, made by Mittower to Williamson, and due one, two, three and four years thereafter. Among the lands in this mortgage was "one undivided half of the headright claim of Thomas Talbert."

The notes on their face appear to have been given for lands.

On same day Mittower executed to Bowerman a mortgage upon, among much other lands and land certificates, "seven hundred and thirty-eight acres of land of the headright of Thomas Talbert." This mortgage included much more than the Williamson mortgage, and was to secure $19,201.60, the aggregate of notes described.

After the maturity of the notes to Williamson, he brought suit against Mittower upon the notes and to foreclose the mortgage, also upon a note for $647.

In 1847 or 1848 Williamson died, and his widow, Emily, administered. She made herself party to the suit against Mittower, and at spring term, 1848, of district court of Lamar county, May 10th, an agreement to arbitrate was filed. The agreement stipulated that "the whole matter shall be referred to two disinterested persons as arbitrators," etc.

In July the arbitrators returned their award, George W. Wright and Lewis Stephens acting.

In the award in favor of Mrs. Emily Williamson, administratrix of Isaac Williamson, among other lands, was "also fourteen hundred and seventy-six acres, known as the Thomas Talbert survey."

Subsequently, and at next term of the district court, this award was approved and made the judgment of the court. The award, being copied into the minutes as part of the decree, being in favor of Emily C. Williamson, administratrix of Isaac Williamson, against A. Mittower.

In behalf of defendant was read the deed of date March

22, 1849, by Williams, as administrator of Bowerman, and as attorney in fact for A. Mittower, for the west half of the Thomas Talbert third league. This with other lands was conveyed to Wright in payment of two judgments in his favor against Mittower and Bowerman.

It seems that Williams brought suit to foreclose the mortgage to his intestate, Bowerman, and a decree foreclosing the mortgage was rendered. The statement of facts contains a copy of such decree, but without date. The decree contains no description of lands, but orders "that the lands mortgaged to secure the payment of said notes and described in the petition be sold," etc.

The probate court, by an order, authorized Williams to buy for the estate.

In a suit by the Bowerman heirs against Williams, administrator, Wright intervened, alleging his purchase, and that his title be made good, asks the sanction of the court, and in its decree the conveyance by Williams as administrator to Wright was confirmed.

Wright and Stephens testified that it was not their intention to set apart in the award but one-half of the Talbert tract to the Williamson heirs.

Wright also testified that he had paid full consideration for the land, and had had possession for many years.

The charge of the court, after stating the case, continued:

"5. If this award of the arbitrators and decree of the court rendered therein was, by mistake, so made as to include the whole of one-third of a league, when only one-half of said one-third league was in litigation, then neither the arbitrators nor the court had any right or authority to divest the legal owner of said one-half and vest it in the ancestor of the plaintiffs or any one else. Again,

"6. If at the time the proceedings were had in the district court of this county in the case of Williamson v. Mittower in 1848, if Bowerman or his estate was the legal or equitable owner of one-half of the one-third league, and if this half was not in controversy in the above named suit, no decree which this court could render would divest the

title out of Bowerman's estate and vest it in the plaintiffs or any one else; and if from the evidence you find these facts to be true, you will find for the defendants.

"7. It is true that this decree would, taken by itself and unexplained by any other part of the record, seem to vest the title in the ancestor of plaintiffs. But if these records and proceedings in the district court show you that only one-half of this one-third league was in litigation in that suit, then it would make no difference what sort of a decree the court might render, it would not divest the proper owner of any right or title he might have had to the land in question, and your verdict should be for the defendants.   . . .

"8. The deed from Bowerman & Williamson vested in Mittower the equitable title to the Talbert one-third league, and it makes no difference that the patent was afterwards issued to Williamson & Bowerman. And if after this, Mittower made a mortgage to Bowerman for one-half of the Talbert survey, this would show an outstanding legal title in Mittower, and an equitable or mortgage title in Bowerman, and unless the testimony shows that this title thus acquired has been divested out of Mittower or Bowerman's estate, and vested in plaintiffs' ancestor, you will find for the defendants.

"9. I shall not trouble you with any charge on the rights of any of the parties that may have grown out of the suit of Bowerman's Heirs v. Williams, the administrator of Bowerman, and George W. Wright as intervenor. All that may be said of that case is that these proceedings in no way strengthen the title of the plaintiffs, and if it adds anything to the defendant's it could only be in support of his plea of limitation, which has not been insisted on as a defense on this trial."

Verdict and judgment were for defendants. Motion for new trial was overruled, and plaintiffs appealed.

The assignments of error sufficiently indicate as error the rulings of the court on the pleadings, admission of testimony, and in the charge touching the effect to be given to the arbitration proceedings and decree, adjudging to the plaintiffs the entire interest in the Talbert tract of land.

*Hancock, West & North*, for appellants.

*Hale & Scott*, for appellee.

A. S. WALKER, J.— The questions presented are:

1. Do the proceedings anterior to the final decree limit its effect so as to correct its disposal of the entire Talbert tract?

2. If not, can a mistake be shown by parol in support of the defense?

3. The effect of such decree upon the title claimed by the defendant.

1. As, from its very nature, the *final* judgment is the declaration of the law upon the facts ascertained, the preliminary proceedings cannot be examined to extend its effect or to enlarge its meaning. Will the judgment be alike independent when in excess of the remedy requested, or of the facts alleged for its action?

The purpose of allowing appeals is for the correction of such and other errors. The district court has general jurisdiction at law and equity, and the adjudication of the land from one of the parties to the other is within its jurisdiction. Its power upon the subject is determined by the constitution and laws of the state. In this case the parties, Williamson and Mittower, were before the court. The defendant appeared, defended, and agreed to submit the matters in dispute to arbitration. The court had, as is apparent, jurisdiction over the parties and of the subject-matter of the decree. It had Mittower before it, and had the power to adjudge the Talbert third league of land to Williamson's administratrix.

Again, the pleadings in Williamson *v.* Mittower sought a money judgment and to foreclose a mortgage. Pending the suit the agreement was made to submit "the whole matter" to arbitrators. This is an enlargement of the mode of trial and of satisfaction of the claim. Technical regard to the pleadings nor to the relief to be granted was not exacted from the arbitrators.

If the parties had appeared before the arbitrators, and it had been submitted by Mittower that, in payment of an ascertained sum, the Talbert tract would be given, it was not

incompetent for the arbitrators so to award. The evidence before them has not been reported; it was not necessary or proper that they should report more than their conclusions.

Upon the return into court of the award, the court has jurisdiction under the statute to enter it as the judgment of the court. Pas. Dig., 66.

But having the jurisdiction under the law to make such decree, and having jurisdiction over the parties, "no *error* in its exercise can make the judgment void." Freeman on Judg., 135, and authorities cited; Weathered *v.* Mays, 4 Tex., 388; Tadlock *v.* Eccles, 20 Tex., 791; Withers *v.* Patterson, 27 Tex., 491; Vogelsang *v.* Dougherty, 46 Tex., 472; Taylor *v.* Snow, 47 Tex., 465; Guilford *v.* Love, 49 Tex., 740.

Finding, then, a decree within the jurisdiction of the court, its terms alone will determine its extent; and it will not, in a collateral attack, be restricted by the pleadings. A judgment erroneous for want of issues by the pleadings will be corrected on error or appeal, but it is not void. Kendall *v.* Mather, 48 Tex., 598.

2. Fraud and mistake control the rule as to the admission of parol testimony to vary, explain and contradict written instruments. It is within the power of a court of equity to grant relief against a mistake in a judgment; and it would seem even of the supreme court. Milam Co. *v.* Robertson, 47 Tex., 235.

Such correction, when sought to be made in the court where the mistake occurred, could be reached by an application in the nature of a writ of error *coram nobis.* Weaver *v.* Shaw, 5 Tex., 289; Milam Co. *v.* Robertson, 47 Tex., 239.

The relief should be sought within a reasonable time.

"The rule is well established that a party seeking equitable relief against fraud or mistake is chargeable with laches from the time it was or ought to have been discovered." Connolly *v.* Hammond, 51 Tex., 647.

"The cause of action or suit arises when and as soon as the party has a right to apply to a court of equity for relief. In fraud and mistake it (limitation) will begin to run from

the time of the discovery of such fraud or mistake and not before." 2 Story's Eq. Jur., sec. 1521a; Smith v. Fly, 24 Tex., 352; Kuhlman v. Baker, 50 Tex., 636; Munson v. Hollowell, 26 Tex., 475; Alston v. Richardson, 51 Tex., 6. If it be conceded that the defendant Wright could show the existence of a mistake so as to limit the effect of the judgment to which he was not a party, and upon the pleadings exhibited, still his application for the correction is made over twenty-six years after the alleged act, and with no allegation of ignorance, but with the fact appearing that he had actual knowledge of the proceedings.

In the case of Milam Co. v. Robertson, above cited, such an application, made after seven years, was held too late. In Shaw v. Weaver, 5 Tex., 289, such application was held, " by analogy to a bill of review, limited by our statutes to two years."

We conclude, therefore, that the application to correct the judgment by parol testimony came too late, and defendant could·not acquire any right by showing such mistake, if indeed he has shown it.

It may be remarked that the testimony to the intention of the arbitrators in the award would not necessarily prove the mistake in the decree. The award was filed in court; the parties had the right to examine it; they may and doubtless did acquaint themselves with its contents. No objections were made to the award. The decree as entered may have had the express assent of the parties, Williamson and Mittower.

3. The deed executed 29th September, 1840, to Mittower for the Talbert certificate was on its face a complete conveyance of all estate, legal and equitable. It recited the payment of the consideration and was a deed with warranty. It is not apparent from the record that the note for $17,201.60, executed the same day, included the purchase money for a part interest in the Talbert land. The rights of an unpaid vendor holding a mortgage for the purchase money do not appear to have existed; at least such rights were not asserted by Bowerman. Johnson v. Byler, 45 Tex., 509; Burgess v. Millican, 50 Tex., 401.

The mortgage having been recorded attached to seven hundred and thirty-eight acres interest in the land in favor of Bowerman, as well against the mortgagee as others. The title passing by the mortgage does not pass any estate in the lands. "The mortgagor, notwithstanding the terms of the conveyance, remains the real owner of the fee." Duty v. Graham, 12 Tex., 434; Mann v. Falcon, 25 Tex., 275.

The mortgagor is entitled as against the mortgagee, and ·a fortiori as against all others, to the possession of the land, as well after as before the breach of condition of defeasance. Mann v. Falcon, 25 Tex., 275; Morrow v. Morgan, 48 Tex., 308. The mortgage, therefore, was not a defense as an outstanding title.·

The decree of the district court of Lamar county rendered October, 1848, operated as a conveyance to the administratrix of Isaac Williamson's estate of whatever interest the defendant Mittower at the time had in the Talbert third league of land. As we have seen, the interest or estate upon which the decree could act was *full* title to the one-half interest, and the equity of redemption in the other half, or seven hundred and thirty-eight acres. After that decree Mittower had no power to sell or to diminish the estate or interest in the Talbert land vested in the Williamson heirs. At least any purchaser from him with notice of the right of the Williamson heirs would take no title.

Bowerman's administrator, Williams, having the right to do so, brought suit against Mittower alone to foreclose the mortgage. A decree was rendered for the sale, among other lands, of seven hundred and thirty-eight acres of the Thos. Talbert land included in the mortgage.

The plaintiffs, holding the equity of redemption in the seven hundred and thirty-eight acres so ordered to be sold, could not be affected by the decree. Their rights were of public record; and those participating in the foreclosure proceedings having notice, not having been made parties, they were not concluded in their rights. Morrow v. Morgan, 48 Tex., 307; Peters v. Clements, 46 Tex., 115; Wright v. Wooters, 46 Tex., 380; Sample v. Irwin, 45 Tex., 567.

As against Wright, who is a subsequent purchaser from

Mittower, the plaintiffs are entitled to the possession notwithstanding the foreclosure. Being owners and entitled to possession, their title was good until a foreclosure against them.

There are no pleadings setting up Wright's ownership of the mortgage, if he owns it, and that it is valid. Such equities, if they exist, cannot be adjusted in absence of pleadings. Moreland *v.* Barnhart, 44 Tex., 283; Morrow *v.* Morgan, 48 Tex., 307.

The charge of the court withdrew from the jury all consideration of the pleas of limitation. This appears to have been done in accordance with the course of the defendants in the trial. Taking the testimony of defendant Wright to his possession under his deed duly recorded in 1849, payment of taxes, etc., we do not see *why* limitation was not insisted upon. Had the defenses pleaded been submitted to the jury with like result of a verdict for defendants, such verdict would have been sustained. They were not passed upon by the jury, and in the issues really submitted and acted upon, there was error in the charge of the court.

This state of the record compels a reversal of the case.

The judgment below should be reversed.

REVERSED AND REMANDED.

[Opinion delivered December 18, 1880.]