MARY D. WITHERS AND OTHERS v. WILLIAM PATTERSON.

The jurisdiction of a court means the power or authority conferred upon it by the constitution and laws to hear and determine causes between parties, and to carry its judgments into effect.

The powers of the County Courts, with regard to estates of decedents, are all conferred by statute. Whatever the statute authorizes these courts to do, they may rightfully do.

Though authorized, under certain circumstances, to order a sale of land of a decedent, yet, if the court orders the sale when the circumstances required do not exist, its order is without jurisdiction and without authority.

In the absence of proof as to whether the circumstances required did or did not exist, there always arises a presumption that the County Court, in making an order which, under certain circumstances, it has the power to make, acted within the limit of its authority. Therefore, in the absence of such proof, the circumstances which would have authorized the court to make the order, are presumed to have existed. But such a presumption can be indulged only in the *absence* of proof, and not *against* proof.

Though often said that an order of the County Court for the sale of an estate, and a sale under such order, are effectual to pass the title to the purchaser, yet such expressions are predicated on the assumption that in making the order, the jurisdiction of the court was rightfully called into exercise, and that the order itself was a valid one.

It is not universally true that if a court determines incidentally a question of fact necessary to support its jurisdiction, its determination or judgment can never be collaterally impeached. See the opinion in this case for examples.

---
W i t h e r s   v .   P a t t e r s o n .
---

Orders or judgments of a County Court, made or rendered in the progress of a rightful administration, concerning matters upon which the court had the right to deliberate and decide, cannot be collaterally impeached; because, however erroneous they may be, they are not void.

Orders and judgments which the court has not the power, under any circumstances, to make or render are, of course, null; and being null, their nullity may be asserted in any collateral proceeding where they are relied on in support of a claim of right.

The County Court has no general power to order the sale of lands of an estate. It can order such sale for no other purpose than the payment of debts and expenses of administration, or to raise the amount of the allowance for the surviving wife and children, or, in certain cases, for the purpose of partition and distribution among the heirs.

If the grant of letters of administration was *void*, and not merely irregular or erroneous, that fact may be shown collaterally ; and an order of sale of the estate, made in the course of such void administration, would, however regular in form, be also a nullity ; and a purchaser at a sale under such order, though in good faith and without notice, would acquire no title.   ·

So, if the grant of letters was valid, but it was apparent by the record that the special circumstances, authorizing the court to order the sale, did not in fact exist, the order of sale was void; and, in a collateral action, it might be shown to be void by the record of the court, even as against a purchaser without notice other than the record imported.

But a *bona fide* purchaser at an administration sale, made in pursuance of an order which the court had the power to make, takes a good title, unaffected by any irregularities in the proceedings of the court; and his title cannot be impeached collaterally.

See the opinion in this case for a consideration of the cases in which an order, made by a County Court for the sale of land of an estate, may be impeached collaterally in an action of trespass to try title, based upon a chain of title dependent for its validity upon the order of sale.

The power of the County Court to grant letters of administration in any particular case, depends upon the facts as they exist at the time the letters are granted; and if the court had not the power to grant the letters, all of the proceedings in the course of the administration are nullities, and they can have no validity in favor of any person because such person was ignorant of the want of power in the court to grant the letters of administration.

Upon the estate of an intestate, who died early in 1837, an administrator was appointed in March of that year, who acted as such until July, 1840, when he settled his account and was discharged, there being due him from the estate, and allowed by the court, an unpaid balance of $289.  In September, 1840, an administrator *de bonis non* was appointed, who acted as such until the April Term, 1842, when he made his final settlement, showing a

balance in his favor of $3 83, and he was then discharged. At the February Term, 1843, a third administrator was appointed, but his petition for appointment being lost, the reasons for it do not appear. At the May Term, 1843, he petitioned for the sale of the entire estate, alleging that " some small debts have been made against the estate for fees of office, &c., and that a sale of a portion of said estate is necessary to meet said debts," and further representing that the interest of the estate would be promoted by a sale of the entire estate " under the law which provides for the disposition of estates, where no heirs shall claim within a period of nine years." The order of sale was granted as prayed for, and the lands of the estate were sold. The records of the County Court showing the foregoing facts, it is *held* that the estate for all purposes, except partition and distribution, had been fully administered by the second administrator ; that the small balance due him was to be presumed to have been remitted, and, besides, was subject to the rule *de minimis non curat lex;* that in view of the facts disclosed by the record, the County Court had no power to grant the third administration under which the sale was made ; that if the record of the County Court were entirely silent, or did not forbid the presumption, it would, perhaps, be presumed in a collateral proceeding like the present, that a necessity for the third administration was shown to the County Court ; but that this presumption was repelled by the record of the County Court, and, therefore, could not be indulged ;—and, consequently, that it was not error for the District Court, in an action of trespass to try title, founded on the sale under the order of the County Court, to instruct the jury in substance that the County Court had no power to grant the third administration, and that the sale under it conferred no title.

ERROR from Colorado. Tried below before the Hon. Fielding Jones.

Trespass to try title and for damages, brought by the plaintiffs in error against the defendant in error, on the 7th of August, 1858.

The material facts are stated fully in the opinion of the court. There was verdict and judgment below for the defendant, and the plaintiffs prosecute their writ of error.

*Harcourt & Robson,* for the plaintiffs in error.

*Ballinger & Jack, R. L. Foard* and *H. T. Garnett,* for the defendant in error.

BELL, J.—The plaintiffs in this suit are the surviving wife and the children of R. W. Withers, deceased. They claim the land

in controversy by a chain of title from the original grantee of the government, Henry Harrison. Henry Harrison died in Colorado county in the early part of the year A. D. 1837. In the month of March, A. D. 1837, Abram Alley was appointed administrator of the estate of Harrison. He continued to act in the capacity of administrator of the estate until the July Term, 1840, of the Probate Court, at which time he presented his final account showing a balance due him by the estate of two hundred and eighty-nine dollars and eighty-four cents, ($289 84.) The court made a decree discharging Alley from the further administration of the estate, but there was no formal decree entered that the estate was found to have been fully administered. At the September Term, 1840, of the Probate Court, one Wadham was appointed administrator of the estate, and proceeded with the administration, paying the debt due by the estate to Alley, paying taxes, surveying fees and fees of court, collecting money due to the estate from the previous sale of land, &c., until the April Term, 1842, of the court, when he presented his final account, showing a balance due him by the estate of three dollars and eighty-three cents. This account was received by the court, and acted on as an account for final settlement, and Wadham was discharged from the administration, and released from further liability.

At the February Term, A. D. 1843, William J. Jones was appointed administrator of the estate of Harrison. His petition for letters of administration has been lost from the records of the Probate Court, and we are, therefore, not informed of the grounds upon which the application was made. At the May Term, 1843, Jones petitioned for a sale of all the estate of Harrison. His petition represented that " some small debts have been made against the estate for fees of office, &c., and that a sale of a portion of said estate is necessary to meet said debts." He further represented that the interest of the estate would be promoted by a sale of the entire estate, " under the law which provides for the disposition of estates, where no heirs shall claim within a period of nine years." Upon this petition the Probate Court ordered a sale of all the estate, both real and personal, upon a credit of twelve months ; and further ordered that when the purchase money was

collected, the administrator should pay all the debts of the estate, and then pay the balance into the treasury of the republic, "according to the provisions of the law made and provided for absent or non-resident heirs." Jones proceeded to sell the land belonging to the estate. The tract in controversy was purchased by Joseph G. Ball. Ball sold the land to Abner S. Lipscomb, and Abner S. Lipscomb sold to Robert W. Withers.

On the trial of the cause in the court below, the judge instructed the jury, "that the administration of the estate of Henry Harrison was closed and at an end before the grant of administration to Jones, and that any sale afterwards made would confer no title, the court having no jurisdiction to grant administration."

This instruction is expressed in strong terms, but when considered in connection with the testimony before the court, we are of opinion that the instruction is not erroneous.

There is, perhaps, no subject in reference to which it is more difficult to lay down precise rules by which every case can be clearly and certainly determined, than the subject of the jurisdiction of courts. It is a subject, too, about which much has been loosely said; and it has only been occasionally that superior minds have closely considered the principles involved, and have undertaken to define, with care, the boundaries of the jurisdiction of courts which are said to have general jurisdiction, and the circumstances under which their jurisdiction will, and will not, attach. The word *jurisdiction*, itself, seems to be often used without any determinate signification. We do not propose to enter at length upon this subject, but will content ourselves by attempting to state a few propositions which will suffice for the determination of the case before us.

The jurisdiction of a court means, the power or authority which is conferred upon a court, by the constitution and laws, to hear and determine causes between parties, and to carry its judgments into effect. It is a plain proposition, that a court has no power to do anything which is not authorized by law. The powers of our County Courts, in respect to the estates of decedents, are all conferred by statute. Whatever the statute authorizes the court to do, it may rightfully do. But it does not follow, because the

statute authorizes the court to order the sale of land under cer= tain circumstances, that all sales of land by order of the court are authorized.

It is no difficult matter to determine under what circumstances the law authorizes the court to order the sale of land; and it is certainly true that if the court orders a sale of land when the cir= cumstances do not exist, which, under the law, authorize it to do so, it acts, in doing so, without jurisdiction, or in other words, without authority. These are plain propositions. The difficulties which are presented to courts, arise in cases where there is a defi= ciency of proof as to the circumstances under which the court acted in ordering the sale.

The question presented in such cases is, how far is proof (which is wanting) to be supplied by presumption. In the absence of proof there undoubtedly always arises a presumption that a court of general jurisdiction has acted, in doing a thing which it has the power under certain circumstances to do, within the limits of its authority. The presumption is that the court has done what it was right to do, and not that it has done a wrong. The circum= stances which would have authorised the court to act as it did act, are presumed to have existed. But presumptions are indulged in the absence of proof and not against proof. This court has re= peatedly gone very far to sustain administration, but the princi= ples above stated have been often announced by this court, and, it is believed, have generally controlled its decisions. It is some= times said that a purchaser at administrator's sale is not bound to look beyond the judgment of a court of competent jurisdiction; and it is often said that an order of sale and a sale under the or= der, are effectual to pass the title to the purchaser; but it is always understood that the jurisdiction of the court has been rightfully called into exercise, and that the order of sale is a valid order. If letters of administration were granted upon the estate of a living man because he had been committed to the penitentiary for twelve months, and the record showed the fact, it could never be held that an order of sale of his land, and a sale in conformity with the order, and a formal decree of confirmation, would pass the title to the purchaser. And why not? Here would be a

judgment of a court of competent jurisdiction. Here would be an order of sale and a sale under it; but the whole would be a nullity, because the jurisdiction of the court was never rightfully called into exercise; or, in other words, because the facts did not exist which authorized the court to grant letters of administration and make the order of sale. There exists, in the minds of some, a loose idea, that because the court has jurisdiction to order the sale of land, its jurisdiction is exercised whenever it orders a sale; and it is said that if a court determines any question of fact necessary to support its jurisdiction, its determination or judgment can never be collaterally impeached. This cannot be universally true; because in the case of an administration upon the estate of a living man, the court necessarily determines that the man is dead, and yet the man may be shown to have been alive at the time of the judgment; and in such case, although every step in the proceedings by which the man's estate is sold may have been taken with the most perfect regularity, and although the purchaser buys in good faith, no title passes or can pass. This shows that the court only exercises its jurisdiction when the facts exist which authorize it to do the thing in question. And the question whether the jurisdiction of a court has been exercised or not, is solved by ascertaining whether or not the facts existed which authorized the court to act as it did act.

But the difficulty still remains of determining under what circumstances a party who seeks to impeach the judgment of a court, will be permitted to do so. And here, in respect to the County or Probate Courts, it is important to keep before the mind the distinction between the orders or judgments of a court made or rendered in the progress of a rightful administration, touching matters concerning which the court has the right to deliberate and to decide, and orders or judgments which the court has not the power to make or to render, or has the power to make or to render only under certain circumstances and for certain purposes. Orders or judgments of the first class can never be collaterally impeached, because, however erroneous they may be, they are not void. Orders or judgments which the court has not the power under any circumstances to make or render, are, of course, null,

32*

and, being null, their nullity may be asserted in any collateral proceeding where they are relied on in support of a claim of right. It is the other class of orders or judgments, those which the court has the power to make or render only under certain circumstances and for certain purposes, about which the greatest difficulties arise. I will attempt to illustrate my meaning in reference to the different classes of orders and judgments alluded to, by the statement of a few examples. The County Court, in the progress of a valid administration, has power to make partition of an estate amongst the heirs. Incidental to this is the duty of determining who are the heirs, and the extent to which they are respectively entitled. Let us suppose that the court determines A. to be one of the heirs, when in truth he is not an heir. This judgment of the court is erroneous, but it is not void. Being erroneous only, the error must be corrected by appeal or *certiorari*, or by such other process as the law authorizes for that purpose. It cannot be collaterally impeached. So, if some of the heirs are of the whole blood and some of the half blood, and the court commits ever so palpable an error in determining the amount of their respective shares. These are matters which are committed to the court to deliberate upon and to decide, and a party will not be permitted to acquiesce for the time in an erroneous judgment, and to impeach it afterwards in a collateral proceeding. So, too, the law which confers upon the court its powers, gives certain directions as to the manner in which some of those powers are to be exercised, and prescribes the order of time in which certain things shall be done, and the formalities which shall be observed either by the administrator or the court. The law confers upon the court (I mean the County Court,) the power to cause any of the property of an estate to be sold for the payment of debts, but provides, (perhaps unwisely) that the slaves belonging to an estate shall not be sold, (except in certain cases,) until all other property subject to the payment of debts has been first sold. I think this proviso must be understood as directory to the court and not as a limitation upon the power of the court; and if the court should order a sale of a slave belonging to an estate before selling all the other property subject to the payment of debts, the action

of the court would be irregular and erroneous, but not void; and not impeachable collaterally. The law requires an administrator to return an account of the sale of property within thirty days after the day of sale. This is directory, and the account of sale may be returned and received after the expiration of thirty days from the day of sale. The law makes it the duty of an administrator, so soon as he shall ascertain that it is necessary, to make application in writing for the sale of property for the payment of debts, and the application is to be accompanied by a statement of the expenses of the administration, of the claims against the estate, &c., &c. But I suppose there can be little room to doubt that an order of sale by the court, and a sale in conformity with it, and a subsequent ratification by the court, would pass the title to the purchaser, although there had been no application in writing by the administrator, with the accompaniments enumerated in the statute; in other words, that the action of the court would be held to be irregular only, not void.

The case of an administration upon the estate of a living man, has already been given as an example of the absolute nullity of the proceedings of a Probate Court, even where every step has been taken with perfect regularity; and it is well to bear in mind that in this case the proceedings of the court are absolutely null, *because the case is not one upon which the court has the right to deliberate,* and not for any other reason.

Concerning those orders and judgments which the County Court has the power to make or render, only under certain circumstances and for certain purposes, I will endeavor to communicate my views by a very few observations and examples. In the first place, it is to be borne in mind, that while the County Court has the power to order the sale of land belonging to an estate which is committed to it for the purpose of administration, it has no general power to sell the lands of any estate. Its power to order the sale of the land of an estate lies within very narrow limits. It can order the sale of the land of an estate for the payment of debts and expenses of administration, to raise the amount of the allowance for the surviving wife and children, and, in certain cases, for the purposes of partition and distribution amongst the heirs. The court has no

Withers v. Patterson.

power conferred upon it by law, to sell the land of an estate for any other purpose. Let us suppose that the administrator of an estate should represent to the court that the debts of the estate were all paid; that the property of the estate consisted of several valuable tracts of land; that the only heir was possessed of an estate of his own adequate to all his wants, and that it would be a matter of great public advantage to sell the land of the intestate's estate, for the purpose of building a college, (the case put in the brief of the counsel for the appellee,) could it be contended that the court would have the power to order the sale? And if the court has not the power to order the sale, can any title pass to the purchaser? I am of opinion that the court has no power, in such a case, to order the sale of land, and that no title can pass to the purchaser at a sale made in pursuance of such an order, and this, whether the purchaser has knowledge of the facts or not. I think · the purchaser is chargeable with notice of whatever appears of record in the court showing that the court has transcended its powers; but it is not for this reason that he acquires no title by his purchase; the reason lies further back, and is to be found in the want of power (or jurisdiction) in the court to order the sale. Such a sale, being a nullity, may be impeached collaterally; and when the want of power in the court to order the sale is shown by the record itself, then the constructive notice which the record furnishes to the purchaser, makes the nullity operative as to him, and destroys his claim of title.

Let us suppose that A., being the owner of lands, dies intestate, and his estate is committed to the County Court for administration. Let us suppose that a certain tract of land belonging to the estate is sold upon the petition of the administrator, and purchased by B.; that the sale is confirmed by the court, the purchase money paid by B., and title made to him by the administrator. Let us suppose that afterwards, in the progress of the same administration, the administrator applies, with all formality, for the sale of the same land, that the court orders the sale, that the administrator sells in obedience to the order, and the land is purchased by C., the sale to him confirmed, the purchase money paid, and a deed duly executed by the administrator. Has C., in such a case,

acquired any title to the land? Certainly not. And why? Simply because the court had no power to order the sale at which he purchased. The land did not belong to the estate. The power of the court to order the sale of the land had been exercised and exhausted. Yet C. may have been entirely ignorant of all this, and independent of the former proceedings of the court, would be able to exhibit a good title in himself. But when the former proceedings of the court are shown, then it is manifest that C.'s title or claim of title is an absolute nullity; and this, not because C. was chargeable with notice of B.'s title, but because of a total want of power in the court to make the second order of sale. Whenever there is a want of power in the court, its act is a nullity, no more and no less in one case than in every other, and without any regard to the particular facts or circumstances.

I conclude then, that a *bona fide* purchaser at an administrator's sale, made in pursuance of an order which the court had the power to make, takes a good title, and is not affected by any irregularities in the proceedings of the court. I mean that he takes a title which cannot be impeached collaterally. If the case is one of a grant of administration when the court had no power to grant letters of administration, all the proceedings of the court in the progress of such an administration, are null and void, and may be shown to be so in any collateral proceeding in which they are relied on to support a claim of right. And in the case of a rightful administration, every order or judgment which the law has not conferred upon the court the power to make or render, is a nullity, and may be impeached collaterally, by showing from the record itself the want of power in the court to make or render the order or judgment in question. If the record is silent, and the order or judgment is one which the court has power, under any circumstances, to make or render, then it will be presumed that the circumstances existed which authorized the court to make or render the order or judgment in question; but presumptions will not be indulged which are repelled by the record itself.

It is also to be remarked, that the power of a court to grant letters of administration in any particular case, depends upon the facts as they exist at the time the letters are granted; and if the

court had not the power to grant letters of administration, none of the proceedings in the course of such an administration can have any validity in favor of any person on the ground that such person was ignorant of the want of power in the court to grant the letters of administration.

As to the case before us, the records of the Probate Court of Colorado county showed that the estate of Henry Harrison, for all purposes except partition and distribution, had been fully administered by the second administrator, Wadham. His final account, it is true, showed a trifling balance due him by the estate, but he does not appear to have claimed payment of this small sum, and the presumption would arise from his discharge without asking payment, that he remitted the debt to the estate. Besides, the sum was so inconsiderable, that the rule *de minimis non curat lex* might well be applied to it. Upon the discharge of Wadham from the administration, the estate vested in the heirs. Indeed, it is the settled doctrine in this State, that upon the death of the ancestor, the estate vests in the heirs, and that the administrator acquires only a qualified interest in the estate for the purposes of administration. Under the circumstances attending the estate of Henry Harrison, as disclosed by the records of the Probate Court of Colorado county, we do not mean to say that the court did not have the power, under any circumstances, to grant a further administration of the estate, after the discharge of Wadham. But the estate appeared to have been fully administered, and the court had no power to grant further letters of administration, unless a necessity was shown for such further administration. And here, if the record was entirely silent, or did not forbid such a presumption, in a collateral proceeding like the present, the presumption would perhaps be indulged, that the necessity for a further administration was shown to the court. But we are of opinion, that the whole record of Jones's pretended administration repels the presumption that any necessity for a further administration after the expiration of Wadham's administration, was shown or could have existed. And this view leads us to the conclusion that the court below did not err in the instruction given to the jury. The judgment of the court below is therefore affirmed.

I have not made reference to authorities in this opinion, because the decisions of this court, upon the subject of the jurisdiction of the county or probate courts, are familiar to the profession throughout the State, as are also the principal cases decided by other courts, which have been frequently cited by this court, and which will be found cited in the very able briefs of the counsel.

Judgment affirmed.