KENDALL & HARCOURT v. EDMUND MATHER.

1. CONTROL OF DISTRICT BY SUPREME COURT.—The judgments of the Supreme Court are not open to question or discussion, but are binding and conclusive upon the District Court, in the cases in which they are pronounced.

2. DECISION REFUSING TO ANNUL JUDGMENT.—Where the Supreme Court has refused to annul a judgment of the District Court, brought before it on an appeal from a decree perpetuating an injunction restraining its collection, the District Court is bound by the judgment of the Supreme Court, and cannot reopen the questions relied on to avoid the judgment, nor continue the injunction so condemned.

3. SAME.—The Supreme Court having held a judgment of the District Court not to be a nullity, the District Court is concluded thereby,

and cannot entertain further litigation upon the grounds relied on to annul such judgment.

4. NULLITY.—Where the District Court had jurisdiction of the parties and of the subject-matter, a judgment granting relief not prayed for is not a nullity.

ERROR from Fort Bend. Tried below before the Hon. L. Lindsay.

Kendall & Harcourt were employed by John Johnson to collect notes for over $7,000 from J. L. Pool, secured by trust deed on two tracts of land. Mather held a prior lien on one of the tracts, and made an arrangement by which Kendall & Harcourt were to collect Johnson's note from Pool, and out of the proceeds to pay Mather. Kendall & Harcourt recovered judgment against Pool, who, before execution, went into bankruptcy; when Mather, taking the matter into his own hands, bought both tracts of land on account of his debt.

Kendall & Harcourt then brought suit against Johnson and Mather, for their fee in the suit against Pool, the original petition alleging Johnson's insolvency, and claimed judgment against Johnson for $500, and a lien on a tract of 245 acres, bought by Mather for its payment. Judgment by default was taken against Johnson, and Mather answered, denying the equity of the claim. Plaintiffs amended, setting out more fully the facts relied on as against Mather, and showing a liability by him, and renewing the prayer in the original, and adding a prayer for general relief.

At a subsequent term, a trial was had, the jury returning a verdict: "We, the jury, find for the plaintiffs in the sum of $550, with the lien upon the 245 acres of land."

Upon this verdict, Harcourt, one of the plaintiffs, prepared a pencil memorandum of a judgment against Johnson for $550, and a decree for the sale of the land for its payment, which was exhibited to Hamblen, attorney for Mather, and approved by him. Hamblen, thinking that the judgment, made his motion for new trial; and, returning to his resi-

dence at Houston two days before the adjournment of the court, prepared the appeal bond on that understanding of the case.

The clerk entered the judgment on the minutes against Johnson, but thinking in doing so it was a mistake, and that Mather was the party against whom the judgment was intended, called Harcourt's attention to the supposed error, who assented to the correction. The judgment was read to the judge as against Mather, and his attention called to the erasure and change prior to his signing the minutes.

Mather prosecuted his appeal to the Supreme Court, which reversed the judgment below as to the lien on the 245 acres of land, and rendered judgment final for the money judgment against Mather.

Mandate on this judgment being sent to the court below, Mather sued out an injunction against it, on the ground that the alleged erasure of "Johnson," and substitution of "Mather," in the original judgment, rendered it null and void. A temporary injunction was granted by Hon. L. Lindsay, (successor to Hon. T. C. Barden, before whom the original suit had been tried,) and the cause was tried November 21, 1871, when a decree was rendered, annulling the original judgment against Mather, and perpetuating the injunction.

From this decree Kendall and Harcourt prosecuted an appeal. October 28, 1872, the Supreme Court decided the appeal, holding that the proceeding by injunction was irregular, reversing and remanding the case.

The mandate in this case, with the opinion of the court, was filed in the District Court March 3, 1873.

March 18, Mather, amending, renewed his charge of fraud in the erasure and alteration in the judgment; insisting that it was not known to him until after the mandate in the original case was filed, and that his only remedy was by this proceeding.

Kendall & Harcourt then filed a protest, with a plea of *res adjudicata*, invoking the mandate and opinion of the Su-

preme Court on the appeal; insisting that, in accordance with the opinion, the injunction be dissolved, &c., and the bill be dismissed.

The court refused to dissolve the injunction or dismiss, and "directed the parties to proceed with the trial of the cause."

The defendants thereupon responded to the court, that there was nothing to try; that there was no new issue tendered; that the matters in controversy were *res adjudicata*, and declined to take any part in any trial the plaintiff and the court might see proper to proceed with.

The plaintiff then announced that he would not proceed *ex parte*, and asked the court to continue the case. The court then entered a continuance on March 19, 1873. These proceedings appear by bill of exceptions, the judge in a note disclaiming any intention of declining to obey the mandate.

October 29, 1874, Mather, further amending, alleged that defendants were prosecuting another suit, in the District Court of Harris county, against him, for the same cause of action, instituted since the judgment sought to be enjoined.

October 30, defendants, Kendall & Harcourt, offered to file an amendment, setting up in detail the history of the original suit; insisting that the erasure was made by the district clerk, and under the direction of the court; denying fraud, asking judgment in reconvention, &c. This was refused, "because the court had no jurisdiction of the case, so far as the original cause of action is concerned, with the said E. Mather."

The court instructed the jury, after stating the case,—

"If, therefore, the jury believe, from the evidence, that the entry of the judgment was first against John Johnson for professional services, it was then rightly entered, and was responsive to the verdict of the jury; and any subsequent alteration was error, and a nullity. If the jury then believe, from the evidence, that there was an alteration and erasure of the first entry, no matter when made, it was in

violation of the plaintiff's right, unless he (plaintiff) had, at the time, full knowledge of such alteration and erasure, and assented to it; and the jury are instructed to find for the plaintiff."

In accordance with the instruction, the jury found for the plaintiff, and the court entered a decree again annulling the original judgment, and perpetuating the injunction.

Motion for new trial was overruled, and defendants bring the case, by writ of error, to the Supreme Court.

*John T. Harcourt,* for appellants. — It is believed that this is the first instance in the history of Texas in which a district judge has openly placed himself in antagonism to the Supreme Court, by a positive refusal, in a pending cause, to observe and obey the mandate and opinion as pronounced in the particular case.

A grave question is presented as to the action this court must take, in its constitutional authority to enforce its jurisdiction.   (Const., art. 5, sec. 3.)

In the present aspect of this case, we feel entire confidence in asking the court to reverse the judgment and to dismiss the case.

The case has been tried and adjudicated as fully and finally as any case can be tried in this court.   Whether it was rightly decided, is not now a debatable question.   The decision is binding and must govern this case.   Neither the District Court nor this court can overturn that decision, so far as it affects the present parties.

The judgment of the Supreme Court was that Judge Lindsay had no authority to grant an injunction to restrain the execution of a judgment of the Supreme Court, and that the proceeding was wholly irregular.

No amendment of the pleadings could change or modify this judgment of the court, and the duty of the district judge was a plain one—to obey the mandate and dissolve the injunction, with damages for the delay.

The following authorities support this view of the case:

"The only question that afforded any pretext of equity in it had been decided by the Supreme Court adversely to the petitioner." (Bryan _v._ Bridge, 10 Tex., 152; Grassmeyer _v._ Beeson, 18 Tex., 753; Wood _v._ Wheeler, 9 Tex., 128; Burke _v._ Mathews, 37 Tex., 74.)

If we are called upon to defend the correctness of the opinion delivered by the Supreme Court, we respectfully insist, that under the state of the pleadings and the case as made, the District Court had no jurisdiction, and "the proceeding was wholly irregular."

The authorities cited heretofore (Vardeman _v._ Edwards, 21 Tex., 740; 2 Bibb, 241; 1 Johns. Ch., 432; 6 Id., 479; 2 Story's Eq., 173; Hilliard on Injunc., 214; Anderson _v._ Barry, 2 J. J. Marsh., 279; the case in 22 Grat., 649; Burke _v._ Mathews, 37 Tex., 74) will sustain the decision made in this case.

Counsel argued that the showing for equitable relief was insufficient, citing 3 Ala., 521; 3 Bibb, 80; 1 J. J. Marsh., 470; 12 Pet., 491, and cases cited; 22 Grat., 649; 29 Ala., 174; Johnson _v._ Lyon, 14 Iowa, 431; Goss _v._ McClaren, 17 Tex., 114.

_Ballinger, Jack & Mott,_ also for appellants.

I. The question presented by this record seems to involve in the highest degree the essential power of this court, and the subordination of the District Courts to its appellate authority. The question is not now whether a judgment against an appellant and his sureties, rendered by this court, may be enjoined by a District Court for some supposed infirmity in the judgment of the court below on which it was based; but the question is whether, having been so enjoined, and an appeal to this court against the decree of injunction having been reversed on the ground that its mandate could not be disregarded, and the mandate of this court having again gone to the court below, and directed it to proceed in ac-

cordance with that opinion, can the court below refuse obedience to this mandate, act upon its own ideas of the law, and again perpetuate the same injunction? If this is tolerated, then this is not a court of appellate authority at all, but the District Courts can review your judgments and disobey your mandates at pleasure. If the case as it stands before you now is one of reasoning, and not of authority,—of discussion as to which better understood the law, the District Court or the Supreme Court, and not of the enforcement of your necessary vital powers,—there is no mandate you can issue that may not be set at naught and defiance. (Thompson *v.* Albert, 15 Md., 268; Attorney-General *v.* Lum, 2 Wis., 507; Miller *v.* Jones, 29 Ala., 174; Matthews *v.* Sands, 29 Ala., 136; Clary *v.* Hoagland, 6 Cal., 685; Porter *v.* Hanley, 5 Eng., (10 Ark.,) 187; Pulaski Company *v.* Lincoln, 8 Eng., (13 Ark.,) 104; Rector *v.* Danley, 14 Ark., 307; Hobson *v.* Doe, 4 Blackf., 487; Chambers *v.* Smith, 30 Mo., 156; Cumberland & Co. *v.* Sherman, 20 Md., 117.)

It is the duty of the Circuit Court to carry a mandate into execution literally. (West *v.* Brashear, 14 Pet., 51.) If judgment be directed for defendant, new trial cannot be granted by court below. (*Ex-parte* Dubuque and Pacific Railroad Company, 1 Wall., 69.)

On second appeal, nothing is brought up but the proceedings subsequent to the mandate. (Sibbald *v.* United States, 12 Pet., 488; Washington Bridge Company *v.* Stewart, 3 How., 413; Roberts *v.* Cooper, 20 How., 467.)

Defendant cannot take second appeal, the effect of which is practically to review the decision of the Supreme Court. (Corning *v.* Troy Iron and Nail Factory, 15 How., 451.)

The point has been directly decided by this court. (Burke *v.* Mathews, 37 Tex., 74.)

II. If the original case is open to examination from the commencement, we think it abundantly clear that a judgment against Mather was proper on the pleadings and verdict.

The plaintiffs' case was, that, as attorneys for Johnson, they had claims secured by lien against Pool, on which they brought suit; that Mather holding claims against Johnson, an arrangement was entered into by which Kendall & Harcourt were to collect from Pool, and apply proceeds to the discharge of the debt to Mather, retaining their fees due from Johnson; that Mather prevented their carrying this out, buying in the land at a nominal price. The allegations of liability of Mather for their fee from Johnson, provided he held the land, could not be more explicit. They considered their fee a lien on the 245 acres of land. But it is most apparent that the lien was additional to this liability; and that if no lien existed, they alleged, as strongly as could be alleged, their right to the payment of their fee. Prominence is given to the averments of the lien, not, however, as resulting from any contract with Johnson, but as a result of the equitable liability of Mather, and provided Mather held the land against which they were proceeding. Nothing can be more obvious than the claim of liability by Mather. Kendall & Harcourt say: "We were lawyers, entitled to a fee of $500, employed by Johnson in proceedings against Pool. Agreement was made by which a debt Mather held against Johnson was to be paid out of our collections. But our fees in the case, $500, were to be retained. Mather did not permit us to collect, but got possession of all the property. This he cannot do without paying our fee; and we claim this fee to be a lien on land to which he obtained title at a mere nominal price. The facts stated and the prayer were ample to sustain the judgment against Mather." (Trammell *v.* Watson, 25 Tex. Supp., 216.)

On a general verdict for plaintiffs for $550, judgment against Mather for the amount should have been rendered. Whether judgment had been previously rendered by default against Johnson, (a notorious insolvent,) is not material. Mather is not concerned as to this.

The theory of the plaintiff, Mather, and of the judge below,

was that whatever was written or entered by the clerk of the court on the minutes or records of the court, before approval or signature to it by the judge, became a judgment of the court, which could not afterwards be altered without *ipso-facto* fraud, forgery, or some other vice producing nullity. A more fallacious view of the judgment of a court cannot be conceived.

A judgment is defined: "The decision or sentence of the law, pronounced by a court or other competent tribunal, upon the matter contained in the record." (Freem. on Judg., sec. 2, citing Jacobs' Law Dict.; 3 Blackst. Comm., 395.)

Who pronounces the law? The counsel in the case? The clerk of the court? Most certainly not. But the judge of the court.

Suppose counsel draft (in pencil) and agree on what they suppose should be the judgment, it is the duty of the clerk, in the faithful discharge of his duties, to call attention to what he supposes a mistake, inadvertence, or error therein. But neither clerk nor counsel make the judgment. That is the act of the judge, and until approved by the judge, tacitly or expressly, the writing by the counsel or clerk is not a judgment.

A judgment is not what is entered, but what is ordered and considered. (Freem. on Judg., sec. 38.)

Each court must necessarily be the judge of what it has decided and adjudged, and when it orders an amendment of the record, the presumption of the court must necessarily be that it does not undertake to order its clerk to record what it never had decided. (Freem. on Judg., sec. 63.)

The evidence is clear that the judgment, which was approved by the judge in this case, was a judgment against Mather, the substitution of whose name for that of Johnson was specially called to his attention.

The attention given by judges to the forms of judgments and decrees varies with their peculiar character. We have known judges who acted on the rule, that whatever judg-

38

ment counsel would agree upon, would be approved by them. We have known others who entirely repudiated any such practice, and gave their careful attention to judgments and decrees, requiring conformity to their views of the law. And it does not admit of doubt that the latter is the duty of the judge. An attorney who chooses to rely that the pencil memorandum agreed on with counsel will be adopted by the court, does so at his own risk, and cannot be heard to complain if he should be disappointed. We address ourselves precisely to this case. Far from us to seek to lower the standard of good faith and honor from attorneys to each other and to the court. When malpractice, in any respect, is shown, it is the last thing to be extenuated. But a lawyer drafts a memorandum for a decree, and it is assented to by his opponent, and passed to the clerk. It may contain mistake or inadvertence, as to fact or law, and entirely fail to secure the proper result of the verdict. What is his duty, when such mistake is brought to his attention by the clerk, whose official obligation, so far as in his power, is to make entries of correct judgments? With the most punctilious lawyer, this would depend on the circumstances of the case. In many instances the error might be of a character he could not hesitate to direct its correction; and in no case would he be estopped from obtaining correct judgment, by submitting to the opinion of the court, on whom rests the rightful responsibility. The duty of subsequent notice to the absent counsel would also depend on circumstances, and any attempt at their definition would be superfluous; but the duty, where it exists, is professional, and does not involve the validity of the judgment. Where the judgment was understood to be the subject of a certain appeal, and would come, therefore, to the immediate attention and consideration of the opposing counsel, and if erroneous, would afford ground of reversal, there would be much less occasion for special notice to counsel. Such a hypothesis, as obtaining entry of an improper judgment, to be carried at once to the Supreme Court, there to be concealed

from the opposing counsel, and to be wrongfully and fraud-ulently affirmed, as a ground of equitable relief, is beyond the pale of sober reason, much less of judicial precedent.

On this branch of the case, we think these conclusions are clear—

1. That a judgment against Mather, for $550, was a proper result, from the pleadings and verdict.

2. That it was the only judgment ever entered in the case and sanctioned by the court.

3. That the entry, by the clerk, from the pencil memoran-dum prepared by Mr. Harcourt, and submitted to Mr. Ham-blen, was not a judgment, the correction of which required notice, or involved error of any kind, much less nullity.

4. The allegations of ignorance of the terms of a judgment, the subject of appeal to and revision by the Supreme Court, after argument before and determination by the Supreme Court, involve a negligence inconsistent with equitable relief.

*W. P. & E. P. Hamblen,* for defendants in error.—The point in this cause, is whether, under the peculiar circumstances developed by the record, it can be maintained to correct the judgment of the court in a former suit, and enjoin its collec-tion.

On a previous appeal by the plaintiff in error, with a like statement of facts, it was reversed and remanded.

We are confident that the court will not hesitate to re-verse that opinion. The court then seemed to think, that be-cause the original suit had been acted upon by the Supreme Court, the parties were precluded from seeking any remedy in the District Court by an original proceeding.

We are forced to the conclusion that the court overlooked the previous opinions of this court in Chambers *v.* Hodges, 23 Tex., 104; Horan *v.* Wahrenberger, 9 Tex., 313.

In the first case, the language of the court is so pointed that we cannot but repeat a portion of it:

"The affirmance by the Supreme Court of a void judg-

ment imparts to it no validity, and it may be vacated, and its execution enjoined at any time."

We contend that the personal judgment against Mather was void in the original suit. It was not within the scope of the plaintiff's case.

Mather had no issue to meet in that case but the question of lien, and the erasure of Johnson's name, Mather's co-defendant, and the insertion of Mather's by the clerk could not create a judgment against Mather. It worked a fraud on Mather, however innocently done by the clerk.

We think this case falls within the scope of the following cases: Munn v. Worrall, 16 Barb., 221; Wilson v. Montgomery, 14 S. & M., 205.

The court below was correct in its charge, instructing the jury to find for plaintiff.

The facts alleged in plaintiff's petition were all proved, without any proof to the contrary whatever. The clerk of Fort Bend District Court, in the suit of Kendall & Harcourt v. John Johnson and E. Mather, erased the name of Johnson and inserted "E. Mather." This fact is uncontradicted. It is proved by every witness who testified, and is shown, furthermore, by the appeal bond in that original suit. If it had not been for such erasure, the opinion of the Supreme Court discharged Mather on every issue made against him by the pleadings.

MOORE, ASSOCIATE JUSTICE.—This is the second appeal in this case. In the opinion of the court remanding the case on the former appeal, it was said: "This, then, is an action brought in the District Court to enjoin the judgment of this court; and the District Court has so enjoined our judgment, and disregarded our mandate. Had the mistake in the former judgment been corrected in the District Court, pending this suit in this court, we might have conformed our action to the premises, on the proper filing of an amended transcript. (See Cowan, Adm'r, v. Ross, 28 Tex., 227.) But

the proceeding in this case has been wholly irregular, and the judgment of the District Court must be reversed and remanded. (Anderson *v.* Barry, 2 J. J. Marsh., 279.)" Notwithstanding this direct and positive announcement by this court in this case, that the injunction granted by the District Court in this case was irregular and unwarranted, when the case went back to that court, instead of conforming its action to the judgment and opinion of this court, on precisely the same facts, in effect, as were before the court on the former trial, the court not only refused to dissolve the injunction and dismiss the plaintiff's bill, but perpetuated the injunction which this court had held to have been irregularly and improperly granted. The assumption, by the District Court, of the right to disregard and set aside the judgment of this court, is, evidently, in palpable and direct conflict with its jurisdiction, and has not even the color of authority for its support or justification. However foreign this may have been from the intention of the judge, as we have no doubt it was, his action in thus disregarding its mandate was a contempt of this court, and a virtual denial and repudiation of its appellate power and jurisdiction.

That the judgments of this court, though plainly erroneous, are not open to question or discussion, but are conclusive and binding upon the District Court in the cases in which they are pronounced, is not a matter of doubt or controversy, and does not admit of argument for its support, or require the citation of authorities for its maintenance. Nor, indeed, does appellee's counsel seem to claim for the District Court such authority. But he maintains that the judgment now under review is correct, and should be affirmed, because the judgment of this court which has been enjoined is an absolute nullity. This, however, is to ignore the fact that the character of this judgment was not open to inquiry in the District Court when its judgment was rendered. This court, on the first appeal, held the judgment of the court to be a valid and binding judgment, which the District Court had no authority

to enjoin. To say that a void judgment of this court, or that a void judgment of the District Court, though affirmed by this court, is wholly inoperative, and should be treated as an absolute nullity, when and wherever brought in question, is to beg the question involved in this case. The point here, is not whether the judgment of this court, or the judgment of the District Court which was affirmed by this court, is a nullity, but whether the District or Supreme Court shall definitely and finally determine whether such judgment is a nullity or not. That the judgment in question was not a nullity was the point, in effect, decided on the former appeal of this case. And the judgment of this court thereon is just as conclusive and binding upon the District Court as its decision of any other question to which its appellate jurisdiction has attached.

It is not, however, to be inferred, from what has been said, that we regard the judgment in question as justly subject to any such objection, if the point was now an open one. The alleged vice rendering the judgment, as appellee's counsel insist, absolutely void, is that the prayer in the petition does not justify the judgment. The court, it is not controverted, had jurisdiction of the parties and subject-matter of the suit. This being the case, the objection to the judgment, at most, is for error, and not nullity.

Nor is it to be inferred that we hold, or intend to intimate, that a party is necessarily precluded from relief in all cases against an unwarranted and erroneous judgment of the District Court, because of its affirmance by this court. The sole question presented for our consideration on this appeal, is whether cases are to be finally determined by this court or the District Court;—whether, when this court shall differ from the District Court as to the law of a case, its judgment is to be observed in respect by the District Court, or contemned and disregarded.

The judgment is reversed, and there being no necessity for remanding the case to the District Court, it is considered,

ordered, and decreed, that the injunction granted appellee by the district judge be dissolved, and his bill be dismissed; and that appellants have and recover from principals and the sureties in the injunction bond, the amount from the collection of which they were enjoined, and all costs in the court below, as well as this court, in this behalf expended.

REVERSED AND REFORMED.