### J. D. ANDERSON ET AL. V. ROBERT LOCKHART.

#### (March 13, 1880.)

LIMITATION.— When a sale of land was ordered and made under the Probate Act of 1848, within twelve months from the original grant of letters of administration, on the suggestion of the administrator that there were no debts and "no necessity for keeping the administration open any longer, that the tract of land was incapable of partition, and that the interest of the heirs would be best subserved by selling the said land for cash," *held:* (1) Said sale was a nullity. (2) Parties holding under such title could claim the benefit of the statute of limitation of five years.

IMPROVEMENTS.— The vice in such title would not prevent parties holding under it from claiming as innocent possessors the value of their improvements.

APPEAL from De Witt county. Opinion by WALKER, J.

STATEMENT.— September 20, 1875, Lockhart brought an action of trespass to try title for four hundred and forty-eight acres of land against appellants. The defendants pleaded not guilty, set up title in themselves under an older title, pleaded limitations of three and five years, and suggested improvements made in good faith. The plaintiff claimed under an administrator's deed of date February 27, 1875, made by A. Jeffries, administrator of the estate of Thos. W. Griffith, deceased.

It appeared that in February, 1866, B. F. Griffith was appointed by the probate court of Washington county administrator of said estate and qualified as such. In March he returned an inventory consisting of a few articles of

personal property, which were at once sold, realizing $87.50.
September 6, 1866, the administrator filed an additional
inventory of the tract of four hundred and forty-eight acres
in controversy in this suit and situated in De Witt county,
appraised at $5 per acre. October 1, 1866, the adminis-
trator filed an application for sale of the land, and, copying
from the petition, it "shows to the court that there are no
debts against said estate and no claims in favor of said
estate known to affiant, and no necessity of keeping said
administration open any longer; with a view to closing same
petitioner states that there is a tract of land (describing it)
which is incapable of partition and distribution (there being
seven *per stirpes* heirs of said decedent); that the interest
of said heirs would be best subserved by selling said land
for cash on the first Tuesday in December next, in De Witt
county, as in cases of sheriff sales, when the purchase money
thereof will be paid in petitioner's hands subject to parti-
tion and distribution. Wherefore he asks for an order of
sale of said lands in accordance with this petition," etc.

On the same day the court made the following order
(being a general order of sale):

"Estate of Thos. W. Griffith, deceased. ⎱
  "Application to sell land.     ⎰ In County Court,
  "Filed October 1, 1866.          October 1, 1866.

"The application of B. F. Griffith, administrator of the
estate of Thos. W. Griffith, deceased, coming on to be
heard, and the matters and things therein set forth having,
by the court, been duly considered, it is therefore ordered
by the court that said administrator do, on the first Tues-
day in December, 1866 (the 4th day of said month), pro-
ceed to sell (advertising same as in case of sheriff's sales),
for cash, before the court-house door, in De Witt county, to
the highest bidder, a tract of land described, etc., . . .
(describing the tract), the same being the property of said
estate, and make to this court report of said sale as the
law directs."

The return of sale was made January 28, 1867, showing

that the land had been sold to James P. Pridgeon at $1.25 per acre; total, $560.50. On the same day the court, by an order, confirmed the sale and ordered that "the administrator make title therefor." May 28th the administrator filed an exhibit reporting $638.42 money on hand, having made some collections not inventoried, after deducting costs, expenses, commissions and debts paid, reporting a debt of $47 unpaid.

August 17, 1869, Lockhart filed an application alleging his ownership of a purchase-money note allowed and approved against the estate, and a lien on the tract of land; alleged that the former sale was fraudulent and made to deprive petitioner of his lien; was without jurisdiction and void, etc.; praying for an order of sale under his lien. This application was resisted by the administrator, but October 30, 1869, it was granted, the order reciting "that the administrator had, prior to the said application to sell said land for partition, full notice of the existence of said note and lien, and it further appearing that the proceedings and pretended order of sale for partition were made without authority of law and in violation of the express provisions of the statute and laws of the state in such cases made and provided. It is therefore considered by the court that said order of sale is and was absolutely void." . . . The decree further ordered the sale in satisfaction of Lockhart's lien.

January 1, 1870, order of sale was renewed. Sale was made and return made by an attorney for the administrator. The sale was confirmed March 5, 1870, and the administrator ordered to make deed to Lockhart, the purchaser. November 3, 1873, Lockhart complained against the administrator, and in 1874 he was removed. October 2, 1874, A. Jeffries applied for and was appointed administrator *de bonis non.* He qualified and returned an inventory containing only the tract of four hundred and forty-eight acres of land aforesaid. October 19, 1874, Lockhart again filed an application for an order of sale, alleging that he never

had obtained a deed for the land. The order was made, and under the order Jeffries made sale January 5, 1875. The sale was returned and approved, and deed duly executed to Lockhart for the land February 27, 1875.

The defendants claimed under the deed executed by B. F. Griffith to James Pridgeon, under the sale first ordered; the deed bore date April 2, 1867. Mesne conveyances were exhibited, all duly recorded. There was testimony tending to show that the land had been held adversely by parties under the Pridgeon purchase, using and cultivating same continuously from 1867. There was testimony as to payment of taxes, etc. The court refused to hear testimony of value of improvements.

The court instructed the jury that plaintiff's title was good; that the Pridgeon title was void. Defendants asked instructions on the subject of valuable improvements under their statutory suggestion of good faith; also their defenses under the statutes of three and five years' limitations. These were refused.

The jury found a verdict for plaintiff, and motion for new trial having been overruled, defendants appealed.

The errors assigned are:

1. Error in admitting the proceedings from the probate court evidencing a sale to plaintiff, and the charges given and refused.

2. Excluding testimony to value of improvements, etc.

The appeal involves:

1. The effect of the first sale, whether a nullity.

2. Whether such title can support a subsequent purchaser's limitation of three or five years, and if so, when did limitation begin to run?

3. Whether the vice in the title prevents the present occupants from claiming as innocent possessors the value of their improvements?

OPINION.— 1. Was the sale made in 1866 a nullity? It was not made to pay debts, for the application for sale neg-

atived the existence of indebtedness. The record does not show the existence of a widow or children for whose year's allowance, or for money in lieu of exempt property, the money was needed. The case presents simply a sale within twelve months from the original grant of letters of administration on the suggestion of the administrator that there were no debts and " no necessity for keeping the administration open any longer; " . . . that the tract of land is incapable of partition, there being seven stocks of heirs, and that " the interest of said heirs would be best subserved by selling said land for cash." The proceedings were had under the probate act of 1848. The authority to sell for partition arises under that act from an inability to divide the property so ordered to be sold among the heirs who have been ascertained and duly cited.

The partition proceedings could be commenced at any time after the first term of the court after the expiration of twelve months from the original grant of administration by one or more of the heirs or devisees filing a complaint and causing the administrator, the heirs and devisees to be cited to appear at a regular term of the court, etc. P. D., arts. 1348 and 1357. After service of such citation, a decree of partition may be made ascertaining the heirs, etc., and the share to each, and appointing commissioners. P. D., art. 1358. When, in the opinion of the commissioners, "any portion of the estate is not capable of a fair and equal division," they may report the fact, and on failure of any of the distributees to take the land at its appraisement, then sale may be ordered. P. D., art. 1360.

The presence of the partition stage in the administration originates the necessity for, and confers the power of, sale upon the court under the statute. These proceedings are facts apparent on the record; they may not be supplied by the representations of the administrator. If they exist the power of sale follows; nor will its irregular exercise affect a purchaser. It is insisted that as the county court had the power to order the sale for partition, the exercise of it is

within the jurisdiction of the court, and that any departure from the statutory mode by which the authority to sell is acquired is but an irregularity and not subject to collateral attack. To this we cannot assent.

The rule invoked cures by presumption only the absence of or irregularity in the proceedings calling into exercise the power, but does *not* supply the facts constituting the foundation for it, or conferring it. If it exists, irregular proceedings or want of preliminary proceedings will not vitiate the judgment. If the power exists as a consequence of facts, the facts should exist. If the record shows their absence and negatives their existence, the decree based upon their supposed existence would on its face be without authority.

The probate courts have been repeatedly held to be of general jurisdiction within the subjects committed to them. Their judgments when within their general power will be supported by the presumptions of regularity and validity. But a court of general jurisdiction has not, by reason of the credit given to its decrees, the power to decide upon imaginary facts, and in the absence of parties, and claim effects to follow as legal results. In Littlefield *v.* Tinsley, 26 Tex., 357, in discussing the validity of a sale made under the probate act of 1846, which, as in the act of 1848, required citation to the heirs, etc., before partition, the court (Moore, J.) held: "If the order of sale is not a part of the proceedings had by the judge in making the distribution he has no authority to order the sale; if it is it cannot be done until after notice has been given."

In Flanagan *v.* Pierce, 27 Tex., 79, "The sale of the land was sought upon the score of convenience, ' to enable the administrator to settle up said estate and satisfy all the heirs.' The county court is not authorized by law to order a sale of land belonging to an estate except for the payment of debts, or for the purpose of making partition, when, by the report of the commissioners of partition, it shows to the court that the land itself cannot be parti-

tioned."  .  .  . "Ordinarily a purchaser at administra-
tor's sale will be protected if there has been an order of
sale, sale, and a subsequent confirmation by the court. This
is because, in such cases, the presumption is indulged that
the facts were such as to warrant the sale,  .  .  . and
not because the court has any general power or jurisdic-
tion which enables it to go beyond the law, and to order
the sale of the land of an estate in a case not provided for
by the statute."

In Withers v. Patterson, 27 Tex., 496, it is stated in the
opinion that "it is certainly true that if a court orders a
sale of land when the circumstances do not exist which,
under the law, authorize it to do so, it acts, in doing
so, without jurisdiction, or, in other words, without author-
ity."  .  .  . Again, page 499: "It is to be borne in mind
that while the county court has the power to order the sale
of land belonging to an estate which is committed to it for
the purpose of administration, it has no general power to
sell the lands of any estate. It can order the sale for the
payment of debts and expenses of administration, to raise
the amount of the allowance for the surviving wife and
children, and in certain cases for the purposes of partition
and distribution among heirs. The court has no power
conferred upon it under the law to sell the land of an estate
for any other purpose." Speaking of a sale for other pur-
poses, "such a sale being a nullity may be impeached col-
laterally; and when the want of power in the court to
order the sale is shown by the record itself, then the con-
structive notice which the record furnishes the purchaser
makes the nullity effective as to him and destroys his claim
of title." Again, page 501: "Whenever there is a want of
power in the court its act is a nullity, no more and no less
in one case than in every other, and without regard to the
particular facts or circumstances."  .  .  . If the record
is silent, and the order "is one which the court had power,
under any circumstances, to make, then it will be presumed

that the circumstances existed which authorized the court to make the order or judgment in question; but presumptions will not be indulged in which are repelled by the record itself."

In this case the record is not silent as to the cause upon which the court acted in ordering the sale. Presumptions of regularity are of no aid to the decree. They " are indulged in the absence of proof and not against proof." Id., and cited with approval by Chief Justice Roberts in the leading case of Guilford v. Love, 49 Tex., 741.

Jurisdiction over the person on notice will be conclusively presumed where the record is silent. 49 Tex., 741; 27 Tex., 253. Not so as to authority over the subject-matter. Horan v. Wahrenberger, 9 Tex., 319, and authorities; Freeman on Judgments, §§ 116, 117, 119a. This is a case of absence of authority, not of defective or irregular exercise of it. As the power did not exist to order the sale no title passed to Pridgeon, and of course none was divested out of the estate.

We therefore hold that the court had no authority to order the sale, and that the want of authority was patent upon the record. This result is given as the application of the statutes of 1848, the recognized powers of the probate courts, and the rules to be applied when their action is drawn into litigation. They are given in the leading cases of Guilford v. Love, 49 Tex., 715, and Withers v. Patterson, 27 Tex., 491, from which we have so largely extracted, in connection with the more general rules recognized in Horan v. Wahrenberger, 9 Tex., 319. See, also, Fisk v. Norvell, 9 Tex., 13; Duncan v. Veal, 49 Tex., 611; Northcutt v. Johns, 49 Tex. 456; Rorer on Judicial Sales, sec. 474; Freeman on Judgments, secs. 116 and 117, and cases cited. It follows, therefore, that there was no legal obstacle to Lockhart foreclosing his vendor's-lien claim upon the land; and that such foreclosure sale passed title to him.

2. Without discussing the legality or necessity of the

Jeffries administration, or the necessity for a second sale in favor of Lockhart so that he could have a title satisfactory to himself, we hold that the order of sale, the sale, and irregular return of sale made by the attorney of the administrator, and the order confirming it entered by the court March 5, 1870, sufficiently vested title to the land in Lockhart to put into operation the statutes of limitation in favor of the actual adverse occupancy and claim of the defendants.

The deed from Griffith to Pridgeon of date April 2, 1867, through which defendants claim, was duly recorded April 9, 1867. If a complete deed on its face it is not before us (not being set out in the record); it would be sufficient, in connection with its other requisites, to support the five years' statute of limitations. We do not think it such as to form a link in title or color of title under the three years' statute.

3. The defendants were not direct purchasers from Pridgeon, though claiming through his title. It seems from the testimony that they bought from parties having actual possession of the land. The improvements in one instance at least were made by the defendants, who had been in possession for more than twelve months before the suit was filed.

The statute allowing improvements to be suggested gives (Sartain v. Hamilton, 12 Tex., 222) their value to the actual possessor in good faith. The good faith is more *a fact* than a conclusion drawn from the comparative validity of the superior title set up against him with relation to that under which he entered. Good faith only requires that a man keep his eyes open and deal fairly with what he could readily discover. Possession under a title apparently good, with an honest belief of its validity, is sufficient. A void link in the chain of title will not affect the right to improvements, unless, perhaps, the party making them was party to such void deed, or is chargeable with bad faith.

Berry *v.* Donley, 26 Tex., 747; Hill *v.* Spear, 48 Tex., 585; Farris *v.* Gilbert, 50 Tex., 350.

For the reasons that the court refused to submit to the jury the plea of five years' limitations, and excluded testimony of the value of improvements under the suggestion of good faith, the judgment should be reversed.