John E. NORTON et al.,
Plaintiffs-Appellants,

v.

The AUSTIN NATIONAL BANK OF AUSTIN, TEXAS, Individually and as guardian of the Estate of Robert O. Walters, III, Defendant-Appellee.

No. 75–3356.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1977.

Rehearing Denied Sept. 14, 1977.

Robert B. Summers, San Antonio, Tex., Edward J. Kionka, Carbondale, Ill., for plaintiffs-appellants.

H. Lee Godfrey, Austin, Tex., for defendant-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This is an action for attorneys' fees brought by the attorneys who represented the guardian of the estate of Robert O. Walters, III, an incompetent, in a personal injury case. The district court granted the motion of defendant guardian for summary judgment, and this appeal followed. We reverse.

## FACTS

In 1966, Robert O. Walters, III, was employed by an engineering firm to work as a surveyor on a gas transmission pipeline being constructed by Trunkline Gas Company in Tennessee, Kentucky and Illinois. On August 23, 1966, Walters was apparently walking or running across railroad tracks which bisected the construction site when he was struck in the head by a passing

---

train. Walters as a result was so seriously injured that he was rendered a mental incompetent, with no prospect of recovery. On July 3, 1967, the County Court of Bexar County, Texas, sitting as a probate court, declared Walters mentally incompetent and appointed his father, Robert O. Walters, Jr., as Guardian of the person and of the estate of his son.

On March 10, 1970, Walters, Jr., entered into a contract with appellant attorneys Norton and Waite to represent his son in a tort action against Trunkline Gas Company, O. R. Burden Construction Company, the Louisville & Nashville Railroad Co., and certain individuals. The retainer agreement that Walters, Jr., signed in procuring the services of these attorneys read as follows:

"I hereby retain and employ Kirk Waite and J. E. Norton as my attorney to prosecute or settle all claims for damage against L & N R R or others who shall be liable on account of injuries of ward—Robert O. Walters, III on or about the 23 day of Aug. A.D. 1966. In consideration for services rendered and to be rendered I agree to pay my attorney a sum equal to 33⅓ of whatever may be recovered from said claim either by suit, settlement or in any other manner; provided further that I agree to pay my attorney 50% of whatever may be recovered if a second trial or an appeal to the Appelate [sic] of [sic] Supreme Court becomes necessary.

"It is further agreed that in addition to the above attorney fees, all court costs, subpoenae costs, photos, depositions and court reporter costs, reports, witness statements, and expenses directly incurred in investigating or litigating this claim shall be paid by the undersigned client.

ROBERT O. WALTERS, JR.
Guardian for Robert O. Walters, III.

"I hereby agree to the above and further agree to make no charge for services unless recovery is had in above claim and to make no settlement without consent of claimant.

KIRK C. WAITE      J. E. NORTON
                           Attorney
Copy given to client."

The 33⅓% contingent fee for trial work was handwritten into the contract, while the 50% contingent fee was in the preprinted portion of the contract.

On March 25, 1970, Walters, Jr., as guardian of his son's estate, petitioned the Bexar County Court for approval of the contract. The court entered an order authorizing the contract.

On March 23, 1971, upon the resignation of Walters, Jr., the Austin National Bank of Austin, Texas, (Bank) was appointed and qualified as guardian of the estate of the incompetent.

Suit was brought in the Circuit Court of St. Clair County, Illinois, on July 3, 1968. Before going to trial, appellants Norton and Waite retained the services of appellant Kionka, a specialist in civil appeals, who was to act as a consultant at the trial level and have full responsibility for the appeal. Kionka was to be paid out of the additional 16⅔% stated in the contract for any appellate work.

L. & N. Railroad and O. R. Burden Construction Co. settled before trial for $180,000. Trunkline, however, refused to settle, and the case went to trial in December 1971. On December 21, 1971, the jury returned a verdict in favor of plaintiff in the amount of $575,000 compensatory damages and $750,000 punitive damages, totaling $1,325,000. This was reduced by the amount of the prior settlement of $180,000, resulting in a net judgment of $1,145,000.

On December 7, 1973, Michael Casey, an attorney for the guardian Bank, wrote to Norton and informed him that there was a statute, Tex.Prob. Code Ann., Section 233 (Vernon), which might be construed as limiting plaintiffs attorneys' fees to one-third of the amount recovered. On the basis of this statute, the Bank, as guardian, refused to pay attorneys' fees in excess of one-third of the amount of the settlement. An order was entered authorizing payment to appellants Norton and Waite of $215,833, one-

third of the $647,500 settlement. The balance, $107,917, was placed in escrow by Bank pending the outcome of the fee dispute.

After formal demand for the balance by appellants, and refusal by appellee, suit was filed on June 21, 1974, against Bank, as guardian. Jurisdiction was asserted on grounds of diversity of citizenship and requisite amount in controversy. On February 25, 1975, Bank filed a motion for summary judgment which the district court granted on May 19, 1975, on the grounds that (1) the contract was unenforceable under Texas law, (2) it was an adhesion contract, and (3) whether or not the Probate Court of Bexar County ever "approved" the contingent contract did not control enforcement of the contract, since the Probate Court retained jurisdiction of the estate of the ward, and that court withdrew or attempted to withdraw the earlier order "approving" the contract and that the Probate Court refused to approve payment of more than one-third contingent fees to plaintiffs. Appellants' motion for rehearing, and to alter or amend the judgment was denied. This appeal followed.

Appellants urge several issues as possible grounds for reversal, each possibly sufficient standing alone to justify reversal.

The issues presented are that the retainer contract which provided for a contingent fee of 50% of the amount recovered was valid and binding on a Texas guardian, where that contract was valid in Illinois where it was entered into and performed; that the guardian was estopped from attacking the contract's validity since it accepted the benefits of the contract; that irrespective of the validity of the contract, the order of the probate court approving it was res judicata and thus not subject to collateral attack.

While the reversal which we enter could perhaps be grounded on the conflicts of law point, or the estoppel point, we do not pass on those questions. We rest our decision on the last issue raised.

When the judgment of the Bexar County Court was entered on March 25, 1970, that court, acting as a probate court, had jurisdiction over the estate of Robert O. Walters, III. For that judgment to be questioned, it should have been attacked by a bill of review within two years of the date it was entered. Tex.Prob. Code Ann., Section 31 (Vernon). Appellee Bank argues that the contract involved here is in contravention of Texas [1] law and is thus void and unenforceable. However, on facts quite similar to those involved here, the Texas

1. V.A.T.S. Probate Code, § 233, which provides:

    **§ 233. Collection of Claims and Recovery of Property**

    Every personal representative of an estate shall use ordinary diligence to collect all claims and debts due the estate and to recover possession of all property of the estate to which its owners have claim or title, provided there is a reasonable prospect of collecting such claims or of recovering such property. If he wilfully neglects to use such diligence, he and the sureties on his bond shall be liable, at the suit of any person interested in the estate, for the use of the estate, for the amount of such claims or the value of such property as has been lost by such neglect. Such representatives may enter into contract to convey, or may convey, a contingent interest in any property sought to be recovered, not exceeding one-third thereof, for services of attorneys and incidental expenses, subject only to approval of the court in which the estate is being administered. Acts 1955, 54th Leg., p. 88, ch. 55.

The argument goes that the judgment sought was "property sought to be recovered" inasmuch as it was a chose in action.

Appellants counter that V.A.T.S. Probate Code, § 242 controls. That section provides:

    **§ 242. Expenses Allowed**

    Personal representatives of estates shall also be entitled to all necessary and reasonable expenses incurred by them in the preservation, safe-keeping, and management of the estate, and in collecting or attempting to collect claims or debts, and in recovering or attempting to recover property to which the estate has a title or claim, and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate, on satisfactory proof to the court. Acts 1955, 54th Leg., p. 88, ch. 55.

Our reliance upon *In Re Guardianship of Hair*, Tex.Civ.App., 537 S.W.2d 82, relieves us of any duty to decide which, if either, statute was controlling.

**1064**

Court of Civil Appeals rejected such an argument:

"[A]ppellee contends that the order approving the claim was void since it was 'in direct violation of V.A.T.S. Probate Code, § 233,' pointing to the fact that the contingent fee contract mentioned in the claim referred to a fifty percent contingent fee while the code reference limits the contingent fee to one-third. We disagree for the reasons now to be stated.

"Even if we concede, which we do not, that the order approving the claim was erroneous, it was, nevertheless a judgment of a court of competent jurisdiction and is safe from a collateral attack. *Lynch v. Baxter*, 4 Tex. 431, 449 (1849). It being an order of the court made in the progress of a rightful administration, touching matters concerning which the court had the right to deliberate and decide, it may not be collaterally impeached because 'however erroneous [it] may be, [it is] not void.' *Withers v. Patterson*, 27 Tex. 491, 497 (1864)."

*In Re Guardianship of Hair*, 537 S.W.2d 82 (Tex.Civ.App.1976) at page 83 of 537 S.W.2d. The Supreme Court of Texas refused an application for writ of error, finding no reversible error.

The March 25, 1970 order of the Probate Court approving the contingent fee agreement had been in effect more than two years on December 7, 1973 when Attorney Casey first raised with plaintiff Norton any question as to the applicability of V.A.T.S. Probate Code § 233 to the fee agreement. An order of the Probate Court attempting to set aside the March 25, 1970 order came still later in time, and was itself set aside by that court, we are informed by counsel. In any event we view these later orders as of no effect on the controversy before us. At the time of all these events the March 25, 1970 order was "safe from collateral attack", *Hair, supra.*

On the basis of *Hair* we determine that summary judgment was improvidently entered, and reverse for further proceedings consistent herewith.

REVERSED.